BED, BATH & BEYOND,
INC., Petitioner,

v.

Rafael URISTA, Respondent.

No. 04–0332.

Supreme Court of Texas.

Argued Sept. 28, 2005.

Decided Dec. 29, 2006.

Michael Phillips, Evelyn Ailts Derrington, Phillips & Akers, P.C., Jonathan Christopher Kieschnick, Houston, for petitioner.

Thomas N. Thurlow, Thomas N. Thurlow & Associates, Steven E. Norris, Law Offices of Thomas N. Thurlow & Associates, PC, Allen H. Kline Jr., Jonathan Scott Stoger, O'Quinn, Laminack & Pirtle, Houston, for respondent.

Peter M. Kelly, Moore & Kelly, P.C., Houston, Guy D. Choate, President, Texas Trial Lawyers Association, Austin, for amicus curiae.

Justice GREEN delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice JOHNSON and Justice WILLETT joined.

In this case we decide whether an unavoidable accident instruction given to the jury caused reversible error and requires a new trial. We conclude that because the record does not support a finding that the trial court's submission of the instruction probably caused the rendition of an improper judgment, TEX.R.APP. P. 61.1(a), any error in including the instruction in the jury charge was harmless. Accordingly, we reverse the court of appeals' judg-

ment and remand the case to that court for consideration of the remaining issues.

## I

While shopping at a Bed, Bath & Beyond, Inc. ("BBB") store, Rafael Urista claims he was hit on the head and knocked unconscious by plastic trash cans that fell from a twelve-foot-high shelf. According to Urista's wife, a BBB employee on a ladder in the adjacent aisle on the other side of the shelf was attempting to retrieve merchandise with a broom when the trash cans fell. Although the BBB employee was not called to testify at trial, Urista's wife stated that the employee came around the aisle and observed the scene before returning to assist his customer. After learning of the incident, the BBB store manager approached the Uristas and completed an accident report. At that time, Urista declined the manager's offer of assistance and did not report being knocked unconscious or that he had been injured. The Uristas resumed shopping before leaving the store.

Five weeks later, Urista sued BBB claiming that the trash can incident caused him severe back injuries. The BBB store manager conceded during his testimony at trial that the employee working on the other side of the shelf probably caused the trash cans to fall, but he believed the employee had been acting in a safe manner when the incident occurred.

Urista's testimony revealed that he had previously been treated for back pain due to prior work-related injuries. Urista's physician testified that although Urista's medical records initially showed a diagnosis of "work-related" injuries, he later, at the request of Urista's attorney, changed Urista's medical records to reflect that the injuries were caused by the BBB incident. At the close of Urista's case, BBB moved for an instructed verdict, which was denied. BBB rested without calling any witnesses.

The trial court submitted the case to the jury in a broad-form charge. The liability question asked: "Did the negligence, if any, of Bed, Bath, and Beyond, Inc. proximately cause the occurrence in question?"[1] Over Urista's objection, the trial court also included two inferential rebuttal instructions in the charge, including this "unavoidable accident" instruction: "An occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it." In its brief, BBB conceded that this instruction should not have been submitted. In a ten-to-two verdict, the jury answered "NO" to the liability question and thus did not reach the conditionally submitted damages question.[2] In accordance with the verdict, the trial court rendered a take-nothing judgment in favor of BBB.

In a divided opinion, the First Court of Appeals held on rehearing that the trial court erred when it submitted the unavoidable accident instruction and that it was

---

1. The jury charge defined negligence as "the failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." Proximate cause was defined as "that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred." In addition, the charge specified that "the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom."

2. The damages question asked what sum of money would fairly and reasonably compensate Urista for his injuries, if any, resulting from the occurrence.

likely, although not conclusively established, that the erroneous instruction formed the sole basis for the jury's negative answer to the liability question. 132 S.W.3d 517, 523 (Tex.App.-Houston [1st Dist.] 2004, pet. granted). The court concluded that the erroneous instruction "probably was reversible error that prevented Urista from presenting his [appeal]." *Id.* (relying on *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 390 (Tex.2000)); Tex.R.App. P. 44.1(a)(2). The court accordingly reversed the trial court's judgment and remanded the case for a new trial. 132 S.W.3d at 523. The court declined to reach Urista's remaining issues, including whether the jury's failure to find negligence was against the great weight and preponderance of the evidence.

## II

Assuming the unavoidable accident instruction should not have been submitted, we must now consider whether submitting the instruction constituted harmful error.[3] *See, e.g., Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001); *Timberwalk Apartments, Inc. v. Cain,* 972 S.W.2d 749, 755 (Tex.1998); *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995).

### A

■ Urista argues, and the court of appeals agreed, that our holding in *Crown Life Insurance Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000), controls this case. In *Casteel,* we held: "When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for

the jury's finding." *Id.* at 389. Recognizing that broad-form submission should be used when feasible, we explained that granulated submission should be used when a liability theory is uncertain. *Id.* at 390. We later extended the *Casteel* holding to broad-form questions that commingle damage elements when an element is unsupported by legally sufficient evidence. *Harris County v. Smith,* 96 S.W.3d 230, 235 (Tex.2002). Under *Casteel* and *Harris County,* we presume that the error was harmful and reversible and a new trial required when we cannot determine whether the jury based its verdict solely on the improperly submitted invalid theory or damage element. *Id.; Casteel,* 22 S.W.3d at 388. We must now decide whether to extend *Casteel* again, this time to presume harmful error in the submission of an erroneous unavoidable accident instruction.

■ We specifically limited our holdings in *Casteel* and *Harris County* to submission of a broad-form question incorporating multiple theories of liability or multiple damage elements. *Harris County,* 96 S.W.3d at 235; *Casteel,* 22 S.W.3d at 388. We have never extended a presumed harm rule to instructions on defensive theories such as unavoidable accident, and we decline to do so now. Unavoidable accident is not an alternative theory of liability but is "an inferential rebuttal issue that requires plaintiffs to prove the nonexistence of an affirmative defense," *Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex.1984), or "seeks to disprove the existence of an essential element submitted in another issue," *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex.1978). In this case, the unavoidable accident instruction was given in reference to the causation element

---

**3.** The dissent says the Court "agrees" with BBB that the trial court erroneously submitted the unavoidable accident instruction. 211 S.W.3d at 761–62. This is incorrect. Because BBB conceded the instruction was improper, we do not reach that question.

of the plaintiff's negligence claim. When, as here, the broad-form questions submitted a single liability theory (negligence) to the jury, *Casteel's* multiple-liability-theory analysis does not apply. Moreover, when a defensive theory is submitted through an inferential rebuttal instruction, *Casteel's* solution of departing from broad-form submission and instead employing granulated submission cannot apply. Unlike alternate theories of liability and damage elements, inferential rebuttal issues cannot be submitted in the jury charge as separate questions and instead must be presented through jury instructions. Tex.R. Civ. P. 277. Therefore, although harm can be presumed when meaningful appellate review is precluded because valid and invalid liability theories or damage elements are commingled, we are not persuaded that harm must likewise be presumed when proper jury questions are submitted along with improper inferential rebuttal instructions.

■ Because we hold that *Casteel* does not control this case, we need not undertake the reversible error analysis applied in presumed harm cases, which requires a determination of whether the error "probably prevented the petitioner from properly presenting the case to the appellate courts." *Harris County*, 96 S.W.3d at 235; Tex.R.App. P. 61.1(b). Instead, we apply traditional harmless error analysis and consider whether the instruction "probably caused the rendition of an improper judgment." Tex.R.App. P. 61.1(a); *see Quantum Chem. Corp.*, 47 S.W.3d at 480.

## B

■ An incorrect jury instruction requires reversal only if it "was reasonably calculated to and probably did cause the rendition of an improper judgment." *Reinhart v. Young*, 906 S.W.2d 471, 473

(Tex.1995); Tex.R.App. P. 61.1(a). To determine whether the instruction probably caused an improper judgment, we examine the entire record. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998).

■ A review of the record in this case reveals at least two reasons why we cannot conclude that the unavoidable accident instruction probably resulted in an improper judgment. First, as we explained in *Dillard v. Texas Electric Cooperative*, the inclusion of an improper unavoidable accident instruction is ordinarily harmless and indeed can serve an explanatory role:

> The standard broad-form question is structured such that the jury is not asked whether any particular person was negligent, but whether "the negligence, if any," of particular persons proximately caused an occurrence. There is at least a potential implication in this phraseology that the occurrence *was* caused by *someone's* negligence. We see no harm in explaining to the jury through an inferential rebuttal instruction that no such implication is intended.

157 S.W.3d 429, 433 (Tex.2005) (citation omitted). The truth is, sometimes accidents are no one's fault, and an unavoidable accident instruction, like the one in this case, simply explains to the jury that they are not required to find someone at fault. In this instance, the jury was reminded that it could consider the possibility that the trash cans fell for reasons other than someone's negligence. That kind of a jury instruction does not by itself amount to harmful error. *Id.*

■ Second, it is reasonable to conclude that Urista failed to carry his burden of proof. BBB chose to defend this case principally by attacking Urista's credibility. Urista and his wife were the only

witnesses to his being struck in the head by the trash cans. And while this claim was not directly challenged by BBB, as it would have been difficult to do so in the absence of other witnesses, BBB did vigorously challenge Urista's claim to have been injured as a result of the incident. As we have already noted, the evidence at trial showed that after the incident occurred, Urista declined the manager's offer of assistance and did not report being knocked unconscious or that he had been injured. Moreover, he continued with his shopping before leaving the store. Urista also admitted that he had a pre-existing back injury, that he did not complain of pain immediately after the accident, that medical tests taken after the incident did not reveal any changes in Urista's back, and that Urista's medical records describing his injuries as work-related were changed by Urista's doctor, at the request of Urista's lawyer, to say the injuries were caused by the BBB accident. After hearing this evidence, the jury could quite reasonably have disbelieved Urista's testimony that he had actually been struck by the trash cans that fell off the shelf. In short, the jury could simply have concluded that Urista failed to prove that BBB was negligent and, accordingly, answered the negligence question negatively without regard to the unavoidable accident instruction. But in any event, we cannot conclude that the instruction caused the case to be decided differently than it likely would have been without the instruction.[4] *See Reinhart,* 906 S.W.2d at 473.

▮▮▮▮ The court of appeals relied on *Reinhart v. Young* to hold that the unavoidable accident instruction was harmful in this case. 132 S.W.3d at 522. In *Reinhart,* we held that submission of an unavoidable accident instruction was not reversible error when the defendant introduced ample evidence to support the jury's finding of no negligence, thus prompting a unanimous jury verdict in the defendant's favor. 906 S.W.2d at 473–74. Although *Reinhart* is factually distinguishable from this case to the extent that BBB did not introduce evidence of its own and the jury verdict was not unanimous, our holding in *Reinhart* still does not compel us to conclude that the submission of the unavoidable accident instruction requires reversal. Because BBB did not bear the burden of disproving Urista's claim of negligence, we cannot say that BBB's failure to introduce "ample" evidence to support the jury's defense verdict dictates a new trial. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987) (recognizing the fundamental rule that a plaintiff bears the burden of proving the elements of negligence to establish tort liability). When, as here, the defendant's cross-examination provides a sufficient basis for discrediting the plain-

---

4. The dissent notes that the jury only answered the question related to causation of the "occurrence in question," meaning the falling trash cans, and did not reach the question about causation of Urista's injuries. Because the dissent doubts that negligence played any part in causing the trash cans to fall, the dissent concludes that "the unavoidable accident instruction was likely the sole basis for the jury's answer to the negligence question." 211 S.W.3d at 764. We disagree with that conclusion. As we held in *Dillard,* an inferential rebuttal instruction eliminates the implication that the occurrence must necessarily have been caused by someone's negligence. 157 S.W.3d at 433. Instructing the jury that it may consider the possibility that the occurrence was the result of something other than negligence is not harmful. *Id.* In addition, based on the language of the jury question, we cannot assume that the jury's negative answer is the result of the instruction when the jury could have concluded that Urista failed to establish that BBB was negligent, or that any such negligence was a proximate cause of the occurrence, or that Urista was even struck by the falling trash cans.

tiff's claims, supporting the jury's verdict in its favor, we cannot conclude that the instruction probably caused the jury to render an improper verdict. Nor is the lack of a unanimous verdict in a case with an erroneously submitted instruction always an indicator of harmful error, although it might be in another case.[5]

In reaching our conclusion in *Reinhart,* we also observed that the plaintiff failed to object to another inferential rebuttal instruction that was similar to unavoidable accident (sudden emergency) and that the defendant did not emphasize the unavoidable accident theory during the trial. In contrast, the court of appeals in this case noted that Urista specifically objected to the inclusion of the unavoidable accident instruction and that BBB's counsel referenced the instruction in closing argument. But we are still not persuaded that those factual distinctions compel a harmful error conclusion. As in *Reinhart,* the evidence in this case fails to indicate "that the unavoidable accident instruction in any way caused the case to be decided differently than it would have been without it." 906 S.W.2d at 473.

Though numerous courts have addressed unavoidable accident instructions, only the court below and one other have held that erroneous submission of the instruction constituted reversible error.[6] *See Hukill v. H.E.B. Food Stores, Inc.,* 756 S.W.2d 840, 844 (Tex.App.-Corpus Christi 1988, no pet.). The Thirteenth Court of Appeals found that a note submitted by the foreman during jury deliberations "clearly indicate[d] the jury based its verdict on the alluring but improper theory of unavoidable accident." *Id.* Without such a clear indication that the instruction affected the jury's decision, every other Texas court to consider an improperly submitted unavoidable accident instruction has found any error to be harmless.[7] Likewise, when considering the entire record in this case, which provides no clear indication that the instruction probably caused the rendition of an improper verdict, we must conclude that the trial court's submission of the instruction was harmless.

\*     \*     \*

Because the court of appeals misapplied *Casteel* and erroneously concluded that the trial court's submission of the unavoidable

5. The lack of unanimous verdict may be a strong indicator of reversible error when a trial court's error in allocating peremptory challenges resulted in an unfair trial as a matter of law. *See Lopez v. Foremost Paving, Inc.,* 709 S.W.2d 643, 644–45 (Tex.1986); *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 737 (Tex.1986); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 921 (Tex.1979).

6. *See, e.g., Reinhart,* 906 S.W.2d at 473–74; *Hill v. Winn Dixie Tex., Inc.,* 849 S.W.2d 802, 803–04 (Tex.1993); *Fethkenher v. Kroger Co.,* 139 S.W.3d 24, 34 (Tex.App.-Ft. Worth 2004, no pet.); *Norman v. Good Shepherd Med. Ctr.,* 2001 WL 931152, 2001 Tex.App. LEXIS 5571 (Tex.App.-Dallas 2001, no pet.) (not designated for publication); *Gates v. Astroworld, Inc.,* 1999 WL 417311, 1999 Tex.App. LEXIS 4631 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (not designated for publication); *Ordo-*

*nez v. M.W. McCurdy & Co.,* 984 S.W.2d 264, 272 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *Cortinas v. Gonzales,* 1998 WL 161252, 1998 Tex.App. LEXIS 2064 (Tex.App.-San Antonio 1998, pet. denied); *DeLeon v. Pickens,* 933 S.W.2d 286, 293 (Tex.App.-Corpus Christi 1996, writ denied); *Wisenbarger v. Gonzales Warm Springs Rehab. Hosp.,* 789 S.W.2d 688, 694 (Tex.App.-Corpus Christi 1990, writ denied).

7. *See Reinhart,* 906 S.W.2d at 473–74; *Hill,* 849 S.W.2d at 803–04; *Fethkenher,* 139 S.W.3d at 34; *Norman,* 2001 WL 931152, at \*8, 2001 Tex.App. LEXIS 5571, at \*21; *Gates,* 1999 WL 417311, at \*2, 1999 Tex.App. LEXIS 4631, at \*5; *Ordonez,* 984 S.W.2d at 272; *Cortinas,* 1998 WL 161252, at \*4, 1998 Tex. App. LEXIS 2064, at \*11; *DeLeon,* 933 S.W.2d at 293; *Wisenbarger,* 789 S.W.2d at 694.

accident instruction was reversible error, we reverse the court of appeals' judgment. We remand the case to the court of appeals for consideration of Urista's remaining issues.

Justice BRISTER filed a concurring opinion, in which Justice HECHT and Justice WILLETT joined.

Justice MEDINA filed a dissenting opinion, in which Chief Justice JEFFERSON joined.

Justice BRISTER, concurring, in which Justice HECHT and Justice WILLETT joined.

Accidents happen. Sometimes even when no one is negligent. That was the jury's verdict here. As there is evidence to support that conclusion and the jury instruction told them nothing more, the court of appeals erred in setting the verdict aside. So I join in the Court's judgment.

But I would add that the trial court did nothing wrong. It is true the unavoidable-accident instruction has historically been associated only with defendants who blame children or the weather, but (as we noted recently) *that is not what it says.*[1] All it says is that accidents may be nobody's "fault" in the legal sense. I would not presume such a truism erroneous.

The assumption that such a simple instruction will "nudge" jurors toward a defense verdict reflects a very low opinion of their intelligence. Do we nudge jurors toward a plaintiff's verdict by listing the defendant *first* in every multi-party negligence or proportionate-responsibility question?[2] Jurors may not know the secret meaning of the unavoidable-accident instruction, but they are not cattle who will be stampeded to an improper verdict by something like this.

In any event, I agree with the Court that this instruction was harmless. The evidence supporting the verdict was not "exceedingly weak," as the dissent concludes. There was no direct evidence of the plaintiff's negligence claim—there were no eyewitnesses and the employee at issue never testified. As the evidence was all circumstantial, it was entirely up to the jury to choose what to infer from it.[3] They did not have to agree anything happened as the Uristas claimed; indeed, their verdict requires us to presume they rejected all of it that reasonable jurors could.[4]

Perhaps reasonable jurors must conclude this wastebasket did not fall by itself. But it may have been teetering on the shelf for a long time, and could have been dislodged by another customer rather than an employee. The store manager's belief about what occurred was not binding on the jury; that one party hesitates to call the other a liar does not prevent jurors from doing so.

And even if the jurors inferred that an employee pushed the wastebasket, they

---

1. See Dillard v. Texas Elec. Co-op., 157 S.W.3d 429, 433 (Tex.2005). As the parties' briefs were all filed before we issued *Dillard*, it is not surprising that they did not anticipate our opinion in that case. But whether this instruction might not be erroneous at all was discussed extensively at oral argument.

2. See, e.g., STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 4.1, 4.3, 4.4 (2003).

3. See City of Keller v. Wilson, 168 S.W.3d 802, 821 (Tex.2005).

4. See id. ("But in every circumstance in which reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review.").

did not have to infer negligence. I doubt using a broom to fetch merchandise is OSHA-approved. But the question was whether persons of ordinary prudence (like ourselves, our spouses, or our teenage children) ever do something very much like it. We could hold as a matter of law it was not the safest way, or even that it was a mistake; but the question of negligence was solely for the jury.

Reasonable jurors are not required to find *someone* negligent every time there is an accident. I would stop saying it is error to tell them something we all know is true because of a secret interpretation only lawyers know it has.

Justice MEDINA, dissenting, in which Chief Justice JEFFERSON joined.

Merchandise does not ordinarily fall from the shelves of Bed, Bath and Beyond ("BBB") for no reason. But on September 19, 1998, trash cans stored atop a twelve-foot high shelf, along with other merchandise, fell into the aisle where Rafael Urista and his wife were shopping. BBB argues it was no one's fault; it just happened. It is undisputed that some of this merchandise struck Urista,[1] but even if this were in dispute, it would not matter to this appeal. What matters here is whether the jury's exoneration of BBB, when all the evidence in the case indicates it caused the occurrence, was influenced by the trial court's inferential rebuttal instruction.

David Traxler, a district manager for BBB and its representative at trial, agreed that had BBB's employee, Reggie Neal, been doing his job properly the day of the accident Urista would not have been injured. Traxler was manager of the store on that day and was responsible for investigating the incident. He confirmed that neither Urista nor any other customer had caused the trash cans to fall. He agreed that the most likely cause was the inattention of BBB's employee, which he characterized as "simply a case of human error" rather than negligence.[2]

This was, in part, BBB's defense at trial, arguing that accidents can happen without fault. But instead of offering evidence to support this no-fault defense, BBB asked for, and obtained, two inferential rebuttal instructions, unavoidable accident and new and independent cause, even though there was no evidence to support the submission of either instruction. BBB now concedes this was error.[3] The Court agrees[4] but

1. Q. Now, on the day of this incident, we don't have a dispute, do we, that trash cans fell and hit Mr. Urista on the head, do we?

   A. Trash cans did fall. Other things were knocked down as well. I'm not sure exactly what hit Mr. Urista. It could have been a plate, for all I know.
   Q. Could have been, its your—
   A. Could have been a trash can too, definitely.
   Testimony of David Traxler, district manager for Bed, Bath & Beyond.

2. Q. If Reggie had been doing his job the way he was supposed to be doing it that day, and paying attention during that day, Mr. Urista would not have been injured, would he?

   A. I don't believe so, no.

   Q. And we've established that nobody else was involved in this, in causing Mr. Urista to get hit on top of the head and knock[ed] to the ground except Reggie; is that correct?
   A. Right.
   * * *
   Q. If he's up there dealing with those trash cans in such a manner that it pulls them over and knocks them off, it would be Bed, Bath & Beyond's position that you weren't negligent that day?
   A. I think he—again, I would speculate because I wasn't there. But I believe he caused the accident. I don't believe it was his intent or acting in an unsafe manner, it was simply a case of human error that he knocked a trash can over.

3. BBB concedes error but argues that it "is important to recognize here that the errone-

concludes that the error was harmless. To reach this conclusion, the Court turns a blind eye to the conditional submission in the jury charge and focuses on evidence that is irrelevant to the jury's actual verdict:

The jury was given two inferential rebuttal instructions,[5] despite Urista's protest, and then asked the following two questions:

**Question No. 1:**

Did the negligence, if any, of Bed, Bath, and Beyond, Inc. proximately cause the occurrence in question?

Answer "Yes" or "No"

Answer: <u>NO</u>

*If you have answered Question No. 1 "Yes" answer Question No. 2; otherwise, do not answer Question No. 2.*

**Question No. 2:**

What sum of money, if paid now in cash, would fairly and reasonably compensate Rafael Urista *for his injuries, if any,* resulting from the occurrence in question?

Answer: _____

(emphasis added). The first question asks if BBB's negligence caused the trash cans to fall, and the second question asks whether the falling trash cans caused Urista injury and how much BBB should pay.[6] The jury did not answer the question about Urista's "injuries, if any," because it was conditioned on an affirmative answer to the first question.

The Court, however, concludes that the erroneous, unavoidable accident instruction was harmless by assuming that had the jury answered the second question, it would have concluded that Urista was not injured by the falling trash cans. Only by mixing these two issues together—the one the jury answered and the one the jury did not—can the Court possibly justify its result in this case.

The Court explains that instead of relying on the unavoidable accident instruction the jury could have reasonably concluded "that Urista failed to carry his burden of proof"; i.e., failed to prove that he was struck and injured by the falling trash cans. 211 S.W.3d at 757–58. When the Court's explanation is divided in parts, as was the court's charge, the error becomes apparent. For the jury to have disbelieved that Urista *was struck*, it would first have to reject *both* Urista's and BBB's

ous submission of an unavoidable accident instruction, as submitted here, does not equate to automatic harm or automatic reversal."

4. In *Hill v. Winn Dixie Texas, Inc.,* 849 S.W.2d 802, 803 (Tex.1992) we said that "[a]n unavoidable accident instruction is proper *only* when there is evidence that the event was proximately caused by a nonhuman condition and not by the negligence of any party to the event." (emphasis added).

5. The jury was given the following instructions on new and independent cause and unavoidable accident:

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

An occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

6. *See Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 n. 2 (Tex.1984)(explaining that while a proximate cause question inquires whether the defendant is liable for the event, the damages question inquires whether *there is a causal link between the event and* the plaintiff's injuries); *see also* Comment to Pattern Jury Charge 8.2 (explaining that the issue of the existence of a disputed injury is subsumed under a damages question, which includes the phrase "if any").

testimony on the subject. As the record stands, BBB had no support for its appellate assertion that the trash cans fell in the absence of fault (which is at the heart of the unavoidable accident instruction). Urista testified that they fell, and BBB testified that "[Reggie] caused the accident" as a result of "human error." If the Court is right that any jury, at any time, may ignore uncontested evidence of fault on an "accidents happen" theory, then verdicts will cease to be tethered to the evidence presented at trial.

I suspect, however, that the driving force behind the Court's decision has more to do with the second part of its explanation—that Urista failed to prove that he was *injured* by the falling trash cans. I agree that BBB made a persuasive case that Urista was "not injured" by falling trash cans; therefore, had the jury reached Question 2, a "No" answer would have been difficult for Urista to overcome. Urista's credibility, undermined by his apparent exaggeration of damages, may well explain the jury's answer to Question 1, and the Court's disposition here. But we ask jurors to decide only the questions asked, without regard to the effect of their answers. The trial court in this case sanctioned the jury's deciding "who should win" (without regard to the evidence) by submitting an unavoidable accident instruction, and the Court today stamps its imprimatur on that practice.[7]

The Court's conclusion that Urista failed to carry his burden of proof is thinly reasoned, incorporating none of BBB's arguments on the subject. For example, BBB argues that Urista's evidence "was grossly lacking" because it failed to show that BBB had any actual or constructive knowledge that the trash cans posed an unrea-

sonable risk of harm. While BBB might not reasonably expect a stack of feather pillows, falling from twelve feet, to injure a customer shopping below, it should expect it from a stack of trash cans. Moreover, Traxler testified that BBB had training videos for its employees "show[ing] very similar accidents. Show[ing] people putting stuff up and dropping it on the other side." BBB was clearly aware of the potential problem. Assuming then that this contention goes to the duty of care, I have no difficulty imposing a duty on BBB to exercise reasonable care not to turn their stores into hard-hat areas when retrieving merchandise that BBB has chosen to store above its customers' heads rather than in stock rooms or warehouses.

BBB stored trash cans, and other items, on the uppermost shelves of its merchandise displays, stacking these cans inside one another to conserve space. The record further establishes that on the day of Urista's alleged injury, a BBB employee was on a ladder attempting to retrieve a trash can for another customer. Urista and his wife testified that Urista was injured when that employee caused the trash cans and other items to fall on him. BBB conceded that its employee was careless but characterized his conduct as human error rather than negligence.

I am not certain what distinguishes human error from negligence in this instance, but I do understand the testimony's relevance to the unavoidable accident instruction and to BBB's closing argument which emphasized the erroneous instruction to the jury in the following:

> You see, all of these facts preponderate that the accident did not happen like they say. And more importantly, it

---

7. *See* TEX.R. CIV. P. 226a ("You must not decide who you think should win and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.").

wasn't caused by Bed, Bath & Beyond's negligent conduct. Because the court tells you that there is such a thing as an unavoidable accident. I'm not saying that BB & B wasn't around and might have caused it, that doesn't mean they were negligent, and the court tells that to you.

People have to understand that every accident is not caused by negligence. There's a lot of accidents in this world that are unavoidable accidents. That's what the Court says to you. It's only plaintiff's lawyers who say, every time there's an accident somebody has to be responsible because that's what they want. They want to create that type of litigation.

And sometimes stuff happens. ... it wasn't intended to happen, it just did.

Although BBB contends that there is ample evidence that the falling trash cans were not the cause of Urista's back injury, it cannot argue that the cans did not fall, and its contention that negligence played no part in causing them to fall is exceedingly weak. In fact, I agree with the court of appeals' suggestion that the jury's verdict was probably against the great weight of the evidence and that the unavoidable accident instruction was likely the sole basis for the jury's answer to the negligence question. 132 S.W.3d at 522, 523. I have found no other explanation for the jury's answer to Question 1.

The concurring opinion says there is evidence to explain the jury's refusal to find BBB negligent, but it does not explain what evidence that might be. Instead, it speculates that the trash can "may have been teetering on the shelf for a long time, and could have been dislodged by another customer rather than the employee." 211

S.W.3d at 760 (Brister, J. concurring). There is, of course, no evidence of this, and what evidence there is, such as BBB's investigation, and its conclusions about the occurrence,[8] are discounted as mere belief. *Id.*

I, however, agree with the concurrence that sometimes accidents happen when no one is negligent. Conversely, accidents happen at times when someone is negligent. And in the spirit of the concurring opinion, I would speculate that the latter is more often the case than the former. This is why inferential rebuttal instructions are the exception rather than the norm, and why an unavoidable accident instruction is proper only when there is evidence that the event was proximately caused by a condition or circumstance beyond the control of any party to the event. *See Hill v. Winn Dixie Texas, Inc.*, 849 S.W.2d 802, 803 (Tex.1992).

The concurring opinion, however, suggests that the unavoidable accident instruction is a truism and that its inclusion in the charge can never be harmful error. But it is potentially true only in those cases in which there is evidence and therefore a question about whether conditions beyond a party's control caused the accident. *See Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 (Tex.2005) ("The purpose of these instructions is *to advise the jurors, in the appropriate case,* that they do no have to place blame on a party to the suit *if the evidence shows* that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it.") (emphasis added); *see also Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex.1995) (Unavoidable accident "instruc-

---

8. In addition to the testimony of BBB's representative at trial, its incident report prepared at the time of the accident unequivocally re- cited that the falling trash cans had hit Urista in the head.

tion is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or to resolve a case involving a very young child who is legally incapable of negligence."). The views of the concurring justice simply cannot be reconciled with what we previously said in *Reinhart*:

> [E]xcept in certain types of cases, "courts should refrain from submitting an unavoidable accident instruction ... due to the risk that the jury will be misled or confused by the perception that the instruction represents a separate issue distinct from general principles of negligence." (citations omitted). We are not alone in this concern. At least eighteen of our sister states, agreeing that the instruction confuses and misleads the jury, have prohibited its use in negligence cases. (footnote omitted). Ten other jurisdictions have severely limited the circumstances under which trial courts may instruct juries regarding unavoidable accident. (footnote omitted). And among the states that still retain the instruction, many courts have expressed concerns about its applicability in routine negligence cases. (footnote omitted). We share these reservations.

*Id.* at 472–73.

Finally, the Court justifies its result in this case by noting that erroneous instructions are almost never found to be reversible error. While I agree that such cases are rare, there are a number of reasons for this. Often, the evidence or other instructions in the case render the error harmless, or the harm is addressed in other issues.

For example, in *Dillard,* the appellant complained that the trial court had erred in not submitting an instruction on new and independent cause. *See Dillard,* 157 S.W.3d at 430. We have previously required such an instruction when the evidence raises a fact question on new and independent cause. *Dallas Ry. & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379, 384 (1952); *Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809, 810 (1937). Although there was evidence to support its submission in *Dillard,* that same evidence also supported the instruction on unavoidable accident. Because of this overlap and because the jury was instructed on unavoidable accident, we concluded that the failure to give an additional instruction on new and independent cause was not required and therefore harmless. *See Dillard,* 157 S.W.3d at 433–34.

*Reinhart v. Young* involved the converse situation. 906 S.W.2d 471 (Tex.1995). In that case, the jury was given two instructions, one on sudden emergency and another on unavoidable accident. The plaintiff objected only to the latter instruction. This Court concluded that the instruction was harmless error for three reasons: (1) the defendant introduced ample evidence at trial to support the jury's failure to find him negligent; (2) the plaintiff failed to object to the sudden emergency instruction which reiterated much of the unavoidable accident instruction; and (3) none of the witnesses or counsel referred to the term "unavoidable accident" during the trial. *Id.* at 473–74.

Although the Court apparently recognizes that the facts and circumstances in *Reinhart* are completely at odds with those here, it nevertheless concludes that the result should be the same: "As in *Reinhart,* the evidence in this case does not indicate 'that the unavoidable accident instruction in any way caused the case to be decided differently than it would have been without it.'" 211 S.W.3d at 759 (quoting *Reinhart,* 906 S.W.2d at 473). Thus, it does not apparently matter that

(1) the *Reinhart* defendant introduced ample evidence that it was not negligent, while BBB virtually admitted that it was; (2) the *Reinhart* plaintiff failed to object to one of two overlapping inferential rebuttal instructions, while Urista objected to both, and the evidence did not support the submission of either instruction; or (3) the *Reinhart* defendant did not mention the offending instruction on unavoidable accident during the trial, while unavoidable accident was one of two significant themes [9] in BBB's defense, emphasized again by its attorney in his closing remarks.

Why then does the Court conclude that the instruction here was harmless? It can only be that the Court does not believe that Urista's injury was caused by the occurrence at BBB and that the jury would have so found had it answered the second, conditionally submitted question. But such speculation is beyond the purview of this Court. *See* TEX. CONST. art. V § 6; TEX. GOV'T CODE, § 22.225(a); *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898). The great weight, if not all, of the evidence is contrary to the jury's actual verdict of no negligence. I therefore cannot agree that the erroneous instruction here was harmless.

This case is a rarity, however, because ordinarily the issue of charge error will be subsumed under the court of appeals' analysis of the factual sufficiency of the evidence. Under that analysis, the court must likewise consider the entire record and all the evidence to determine whether a new trial should be granted. Any additional complaints of charge error are either collateral to that review or redundant. Thus, the court of appeals in this case might have rendered the same judgment

by simply ruling on the factual sufficiency issue, but instead the court diverted its attention to the *Casteel* issue. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000).

On that subject, I agree with the Court that *Casteel* should not apply under the circumstances presented here. In *Casteel,* we concluded that it was error to submit a broad-form liability question which commingled valid and invalid theories of liability. *Id.* at 388–89. We found the error to be harmful under Texas Rule of Appellate Procedure 61.1 because it "affirmatively prevented the appellant from isolating the error and presenting its case on appeal." *Harris County v. Smith,* 96 S.W.3d 230, 233 (Tex.2002) (citing *Casteel* and applying its rationale). In this case, unlike *Casteel,* we have a single liability theory, negligence, coupled with an unavoidable accident instruction that should not have been a part of the court's charge.

Whereas the charge error in *Casteel* prevented an appellate court from determining whether the jury's verdict might have been premised on an invalid legal theory, there is no similar mystery in this case. *See Casteel,* 22 S.W.3d at 388. The trial court instructed the jury that it would be misconduct to disregard the court's instructions, and it is reasonably clear that the jury therefore considered unavoidable accident and the other instructions when deciding the question of BBB's negligence. It is also apparent that the jury failed to find that BBB's negligence was a proximate cause of the occurrence in question. Unlike *Casteel,* the charge error in this case did not obscure the verdict's meaning nor did it prevent Urista from presenting the consequences of that error to the ap-

---

9. The other defensive theme was that Urista was not injured by the falling trash cans, but as previously mentioned the jury did not

reach that question because of the conditional submission.

pellate courts. *See Casteel*, 22 S.W.3d at 388 (citing second prong of harmless error standard in TEX.R.APP. P. 61.1, 44.1(a)); *Harris County*, 96 S.W.3d at 233 (same). In short, there is no uncertainty as to the jury's verdict. The issue then is not whether the error "probably prevented the appellant from properly presenting the case to the appellate courts" but rather as the Court says whether the error "probably caused the rendition of an improper judgment." TEX.R.APP. P. 61.1; *see also* TEX.R.APP. P. 44.1(a)(1).

Although I disagree that the charge error in this case presents a *Casteel* problem which affected the presentation of the appeal, I nevertheless agree with the court of appeals' judgment remanding the case for a new trial. The charge error in this case obviously confused the jury. This is apparent from its verdict and a review of the whole record which rebuts the jury's answer to the only question it considered. Because this Court does not confine its review to the verdict actually rendered in this case or the evidence supporting that verdict, I respectfully dissent.