Antonio TORRES, Appellant

v.

Colin TESSIER, Appellee.

No. 14–06–00484–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 31, 2007.

Jason R. Bernhardt, Houston, for appellant.

Eric Lamont Rhodes, James Christopher Diamond, Maureen Spector, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices HUDSON and GUZMAN.

**OPINION**

EVA M. GUZMAN, Justice.

Appellant Antonio Torres sued appellee Colin Tessier, alleging that Tessier negligently caused an auto accident that injured Torres. It is undisputed that Tessier drove his car into the back of Torres's truck while Torres was stopped at a traffic light. It is also undisputed that Tessier was not watching the road at the time and took no action to avoid the collision. The jury found neither Tessier nor Torres negligent. In a single issue, Torres argues the trial court committed reversible error by including a sudden-emergency instruction in the jury charge. Because the jury reasonably could have concluded that Torres failed to carry his burden of proof, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At around 3:00 p.m. on February 1, 2004, Antonio Torres was driving his pickup truck in the middle lane of Main Street in Houston, Texas next to Reliant Stadium, where the Super Bowl was being held. Torres was accompanied by his five-year-old son. Approximately two car lengths behind him, seventeen-year-old Colin Tessier was driving his mother's car in the same lane and traveling at approximately fifteen or twenty m.p.h. Tessier was accompanied by two friends, and his radio was on. There were many pedestrians on the sidewalks, and Tessier had seen people walking in and on Main Street near the stadium that day.

After both cars had traveled several blocks, Torres stopped at a red traffic light. At about the same time, Tessier looked to his left for two and one-half or three seconds while he continued to drive down Main Street, making no effort to stop, decelerate, or swerve to avoid Torres's vehicle. Consequently, the front of Tessier's car collided with the back of Torres's truck.

Torres later testified that although he felt pain right away, he did not complain of

pain at that time because he was more concerned about his son.[1] After the police concluded their investigation of the accident, Torres drove to his wife's place of employment and drove her home from work. He testified that he told his wife that his back hurt, and took Tylenol before going to bed. Torres further testified that his pain worsened over the next couple of days, and he decided he needed professional advice. He therefore consulted an attorney.

According to Torres's trial testimony, his attorney gave him a list of doctors, and Torres chose a chiropractor from the list. He began treatment on February 5, 2004 for pain in his neck and his upper and lower back and shortly thereafter filed suit against Tessier for negligence. Torres was treated approximately twelve times over the next four weeks. No medicines were prescribed, and no x-rays, MRI's or CAT scans were performed.

During cross-examination, Torres conceded he testified in his deposition that his attorney referred him directly to the chiropractor who treated him for the injuries he allegedly sustained. Torres also agreed he had received no medical bills from the chiropractor. Moreover, he admitted he had been in a prior accident in which he had been driving the same truck, was struck from behind, and received treatment for his lower back. As a result of that accident, Torres had filed a lawsuit using the same attorney he initially consulted in this case, but he was treated at a different facility by a different health care provider. According to Torres, the lawsuit arising from the previous accident concluded about six months before this case went to trial. Torres made no claim for property damage in this suit and no claim for future impairment or pain, but instead sought $2,685 for past medical expenses and damages for past pain and mental anguish.

Although Tessier agreed that if he had been keeping a proper lookout he would have stopped his car before colliding with Torres, the parties hotly disputed Tessier's reason for driving through downtown Houston without attending to the road. During trial, Tessier testified that "[o]ut of the corner of my eye I glanced over because of fear of hitting someone, something." Torres's attorney produced evidence that Tessier had previously testified, "I saw somebody that caught my interest on the side." At trial, Tessier explained that the person to whom he referred in his deposition was "a pedestrian on the road. Or in, you know, in that area." He stated that "I glanced over to the left and accidentally looked at someone, fear of hitting a pedestrian" and when asked what had caught his attention, Tessier stated, "It was a movement, which, you know, was out of a group of people.... I saw a movement amongst everything on the road. People and whatnot."

Based on this testimony, Tessier requested the following sudden-emergency jury instruction:

> If a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

Torres objected to the instruction on the grounds that there was no evidence sup-

---

1. There are no allegations that Torres's son was injured in the accident.

porting its submission. He argued that because Tessier admitted there were many pedestrians and he had seen them around and on Main Street before the accident, the events he described were not unexpected. Torres also produced Tessier's response to a request for admissions in which Tessier admitted that "[a]n emergency did not contribute to the cause of the collision made the basis of this lawsuit."

Over Torres's objections, the trial court included the sudden-emergency instruction in the following jury question: "Did the negligence, if any, of those named below proximately cause the occurrence in question?" The names of Torres and Tessier followed the question, and the jury wrote "no" next to each name. In addition to the sudden-emergency instruction, the jury received instructions defining "negligence," "ordinary care," and "proximate cause"; however, the jury charge did not contain an instruction identifying or defining "the occurrence in question." The trial court rendered judgment in accordance with the verdict, and this appeal ensued.

## II. Issue Presented

In a single issue, Torres contends there is no evidence to support the submission of a sudden-emergency jury instruction, and the trial court's error in including the instruction probably caused the rendition of an improper judgment.[2]

## III. Standard of Review

The trial court must submit jury questions, instructions, and definitions that are raised by the written pleadings and the evidence. Tex. R. Civ. P. 278. We review a challenged jury charge for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). To determine whether the incorrect submission of an inferential rebuttal instruction requires reversal, we examine the entire record to determine whether the instruction "'was reasonably calculated to and probably did cause the rendition of an improper judgment.'" *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex.2006) (quoting *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex.1995)); *see also* Tex. R. App. P. 44.1(a).

## IV. Analysis

To prevail on a negligence claim, the plaintiff must not only establish that the defendant breached a duty, but must also prove that the plaintiff sustained damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). Here, the evidence Torres offered to establish the elements of proximate cause and damage consists of his subjective complaints of pain and medical records documenting those complaints. The jury was free to disbelieve this evidence; moreover, the jury's credibility determination is implicit in its verdict, and we presume that jurors decided all questions of credibility and conflicts in the evi-

---

2. Torres originally asserted that the inclusion of this instruction also prevented him from presenting his case on appeal. This argument was based on an opinion that has since been reversed. *See Urista v. Bed, Bath & Beyond, Inc.*, 132 S.W.3d 517, 521 (Tex.App.-Houston [1st Dist.] 2004), *rev'd*, 211 S.W.3d 753 (Tex. 2006). The Texas Supreme Court has now clarified that the improper submission of an inferential rebuttal instruction in a broad-form negligence question requires reversal only if the error is reasonably calculated to and probably did cause an improper judgment. *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex.2006) (quoting *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex.1995)). In his reply brief, Torres acknowledges this holding and offers no basis for distinguishing *Urista*. We therefore treat this argument as abandoned or waived and do not address it further.

dence in favor of the verdict if reasonable people could do so. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005).

■ Assuming without deciding that the sudden-emergency instruction should not have been submitted, we disagree with Torres's contention that the instruction probably caused the jury to render an improper verdict. First, there is no clear indication that the jury relied on this instruction. *See Urista,* 211 S.W.3d at 759 ("[W]hen considering the entire record in this case, which provides no clear indication that the instruction probably caused the rendition of an improper verdict, we must conclude that the trial court's submission of the instruction was harmless."). Moreover, reviewing the evidence under the applicable standard of review, we conclude that another explanation is both more likely and more reasonable: the jury's failure to find negligence could reasonably be based on its failure to find causation, damages, or both.[3] Specifically, the jury could reach any of these conclusions based on evidence such as the following:

- Torres refused an ambulance at the scene;
- he did not complain of pain immediately;
- he did not seek medical treatment until after he consulted a lawyer;
- all of Torres's medical care was rendered by a chiropractor recommended by his attorney;
- Torres had previously been in a rear-end collision in the same vehicle, claimed back injuries, and sued the tortfeasor using the same attorney;
- although the prior case concluded only six months before this accident, Torres selected a different health care provider for this accident;
- the medical records indicate that Torres did not disclose his prior injury or treatment to the chiropractor treating him for this accident;
- no x-rays, MRI's, or other scans were ordered or performed;
- no prescription or "over-the-counter" medication was prescribed;
- the medical claim forms contain the affirmative statement that his injury is not related to an auto accident;[4]
- the medical claim forms also date the onset of his symptoms to January 2004; and
- Torres's payroll records show that, in his occupation as a carpet and flooring installer, he earned more money during the month of his injury and treatment than in eight other months that year.

Considering all of the evidence, we conclude a reasonable jury could have found that Torres failed to prove all of the elements of his negligence claim; therefore, the jury could have answered the broad-form liability question in the negative without regard to the sudden-emergency instruction.

In reaching this conclusion, we apply the same reasoning used in the similar case of *Bed, Bath & Beyond, Inc. v. Urista,* 211 S.W.3d at 757–59. In *Urista,* the plaintiff claimed that a store employee using a

---

**3.** Torres claimed bodily injury only; there was no claim for property damage.

**4.** Each claim form contains the question, "Is the patient's condition related to: a. Employment? b. Auto accident? c. Other accident?" After each option are two boxes labeled "Yes" and "No." There is also a blank that reads, "Place (State) ___" next to the option, "Auto accident." In each of the claim forms, the "Place" is identified as "TX," but the option "auto accident" is checked "no." Instead, the option "other accident" is checked "yes."

broom to retrieve merchandise caused plastic trash cans to fall from a high shelf in an adjacent aisle and strike the plaintiff on the head, resulting in severe back injuries. *Id.* at 755. There, the Texas Supreme Court concluded that the improper inclusion of an inferential rebuttal instruction in an otherwise proper broad-form liability question was not reversible error because it was reasonable to conclude that the plaintiff failed to carry his burden of proof. *Id.* at 757. The Court explained that the defendant's primary defense consisted of attacking the plaintiff's credibility. *Id.* at 757. The Court then held that because "the defendant's cross-examination provides a sufficient basis for discrediting the plaintiff's claims, supporting the jury's verdict in its favor, we cannot conclude that the instruction probably caused the jury to render an improper verdict." *Id.* at 758–59.

The same reasoning applies here, and compels the same result. In *Urista,* as here, the plaintiff continued his errands after the alleged injury. *See id.* at 755. There, as here, the plaintiff had a preexisting back injury and did not complain of pain at the scene. *See id.* In *Urista,* medical tests taken after the incident did not reveal any changes to the plaintiff's back, *id.* at 758; here, the treating chiropractor did not even order objective tests to detect an injury. Evidence was admitted in *Urista* that the plaintiff's doctor altered medical records at his attorney's request to indicate that the injuries were caused by the accident. *Id.* Here, the evidence of non-liability is arguably stronger: although the chiropractor's final report states that Torres was "injured by motor vehicle accident," all of the medical claim forms associated with Torres's treatment contain affirmative statements that Torres's injury was not related to an auto accident and date his symptoms to January 2004, before the accident.

Considering all of the evidence under the applicable standard of review, we cannot say that the inclusion of a sudden-emergency instruction probably caused an improper verdict. Accordingly, we overrule Torres's sole issue on appeal.

## V. CONCLUSION

We hold that any error in submitting a sudden-emergency instruction was harmless; and therefore affirm the judgment of the trial court.