**Affirmed and Memorandum Opinion filed November 1, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00383-CV

**BECKY GILES, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GABRIELLA GILES, Appellant**

**V.**

**BFI WASTE SERVICES OF TEXAS, LP, AND MARQUE C. JOHNSON, Appellees**

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 15-CV-0536**

## M E M O R A N D U M   O P I N I O N

The underlying suit in this case was brought by appellant Becky Giles, Individually and on Behalf of the Estate of Gabriella Giles (Becky's daughter) against BFI Waste Services of Texas, LP, and Marque C. Johnson (collectively "appellees") for negligence. The suit arose from an accident that occurred on the morning of November 14, 2014, as Christopher Blake Ragle was driving himself

and Gabriella to school. Christopher was speeding when he swerved, lost control of his pick-up truck and went into the opposite lane of traffic. Johnson was driving a BFI recycling truck in his own lane and proceeding toward Christopher's pickup truck. The pickup truck collided with the recycling truck. Christopher and Gabriella were killed. The issue at trial was whether Johnson was partly at fault for failing to avoid the collision. The jury failed to find Johnson was negligent and the trial court's judgment ordered appellant take nothing from appellees. From that judgment, this appeal was timely brought.

In a single issue, appellant claims the trial court erred by including an instruction on new and independent cause in the jury charge because Johnson's actions were a concurring cause, not a superseding or new and independent cause, of the collision. In her brief, appellant argues Johnson was negligent for failing to obey the speed limit and "get the garbage truck out of the way." For the reasons stated below, we conclude the trial court's error, if any, was harmless and affirm the trial court's judgment.[1]

## STANDARD OF REVIEW

We must first determine the standard of review for charge error in a case such as this one. Appellant acknowledges that error in the charge is reversible only if it (1) probably caused the rendition of an improper judgment; or (2) probably prevented her from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a). Appellant asserts the alleged charge error in this case satisfies the requisite for reversible error in subsection (1). *See* Tex. R. App. P. 44.1(a)(1). Alternatively, appellant argues that should we determine such a conclusion is too speculative, the

---

[1] Accordingly, we do not address whether the new-and-independent-cause instruction was properly given or if the proper standard of review in making that determination is *de novo* or abuse of discretion.

alleged charge error satisfied subsection (2). *See* Tex. R. App. 44.1(a)(2). In support of this latter argument, appellant relies upon *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). However, *Casteel* does not apply to an improper inferential rebuttal instruction given in reference to the causation element of a plaintiff's negligence claim. *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 756-57 (Tex. 2006). Accordingly, we examine the entire record and apply traditional harmless error analysis to determine whether the instruction "probably caused the rendition of an improper judgment." *Id.; see also Thota v. Young*, 366 S.W.3d 678 (Tex. 2012); *Dillard v. Texas Elec. Co-op.*, 157 S.W.3d 429 (Tex. 2005) (holding *Casteel's* presumption of harm does not apply); and *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995) (holding a harmless error analysis is applicable).

## APPLICABLE LAW

"When defendants blame an occurrence on someone or something other than themselves, the Texas Pattern Jury Charges provide multiple alternatives." *Dillard v. Texas Elec. Co-op.*, 157 S.W.3d 429, 432 (Tex. 2005). In the appropriate case, these instructions advise the jurors they are not required to place blame on a party to the suit if the evidence shows that the conduct of some person not a party to the litigation caused it. *Id.* at 432 (citing *Reinhart*, 906 S.W.2d at 472). One of these alternatives is a sudden-emergency instruction which is applicable if the occurrence is caused by something other than the defendant's negligence and arises suddenly. *Id.* at 432. The record reflects that in addition to the new-and-independent-cause instruction, the court's charge in this case included an instruction on sudden emergency:

> If a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time tor deliberation, his conduct in such an emergency is not

3

negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.[2]

If evidence was adduced at trial to support the jury's failure to find Johnson negligent based upon a sudden emergency, any error in including a new-and-independent-cause instruction would be harmless. *See Reinhart*, 906 S.W.2d at 473.

## EVIDENCE OF JOHNSON'S NEGLIGENCE

The record reflects the recycling truck had exited a 35-mph zone and passed a speed limit sign for 45 mph when Johnson applied his brakes. Both the recycling truck and Christopher's pickup truck were in a 45-mph zone when the impact occurred.

Sergeant Robert Sanderson of the City of Galveston Police Department was the lead investigating officer regarding this accident. Sanderson's crash report stated that Unit 1 (Christopher's pickup truck) was traveling at an unsafe speed, lost control, and crossed over the center turn lane into the westbound lane and was struck by Unit 2 (the recycling truck). From the evidence at the scene, Sanderson concluded that Christopher's speed was 62 mph at a minimum and the pickup truck had skidded sideways 240.3 feet.

Trash bags were found on the road but Sanderson could not determine whether or not they played a role in the accident. Because the wind was blowing hard, he did not know if the trash bags blew into the road before or after the accident. Sanderson testified there was no basis to believe those trash bags came from the recycling truck. Sanderson agreed the trash bags could have been in the road and Christopher swerved to avoid them.

---

[2] There was no objection at trial, and there is no complaint on appeal, regarding the inclusion of the sudden-emergency instruction.

Sanderson testified there was no evidence that Johnson was speeding at the time of the accident. He also stated that Johnson was almost at a stop prior to the collision. According to Sanderson, the recycling truck left a "very small" skid mark. The recycling truck had almost cleared the road prior to impact. Sanderson testified that it appeared Johnson tried to veer to the right to miss the collision.

Sanderson opined that the accident occurred due to Christopher's unsafe speed when he lost control of the pickup truck and crossed into oncoming traffic before striking the recycling truck. According to Sanderson, had Christopher been driving the speed limit, he might not have lost control of the pickup truck. If the trash bags were a factor, Christopher would have been able to better control the pickup truck by driving the speed limit.

The speed limit on the portion of the road where Christopher's skid marks started, and where the trash bags were found, was 45 mph. In Sanderson's opinion, Christopher was not operating his pickup truck using ordinary care in that he was driving at a speed that was unsafe, dangerous and reckless. However, it was Sanderson's opinion that Johnson was operating the recycling truck safely and with due regard for the current driving conditions. Sanderson did not believe Johnson was speeding or ever lost control of the recycling truck and Johnson applied his brakes prior to the collision. There were no long skid marks from the recycling truck but Sanderson explained that in a commercial-motor vehicle with an air braking system there is lag time. This lag occurs from when the brakes are applied to when they actually engage. Sanderson estimated that Johnson had less than two seconds to respond, possibly less than one second. It was Sanderson's opinion that Christopher was the cause of the accident and Johnson bore no responsibility for it. According to Sanderson, Johnson did everything he could to avoid the collision by applying his brakes and moving to the right.

April Yergin, an accident reconstructionist for ATA Associates, testified as an expert witness for appellant. Yergin calculated Johnson's speed to have been between 38 mph and 48 mph at the time he applied his brakes. Yergin ruled out that Johnson was driving 35 mph in the 35-mph zone because he would have stopped before the point of impact if that were the case. Based upon the distance, the length of time the brake lights were on, for 3.5 seconds, the recycling truck's estimated speed of 17.5 mph, and a probable brake application of .35, Yergin concluded Johnson was driving a maximum of 45 mph at the time he applied his brakes.

Yergin testified that Johnson "didn't hit his brakes hard enough." Yergin calculated that Johnson traveled 164 feet after he applied his brakes until the point of impact. Yergin testified that at her highest estimation of Johnson's speed, if he had applied his brakes "100 percent" the recycling truck would have come to a complete stop before the area of impact.

Yergin found Christopher's pickup truck was traveling at a minimum of 62 mph and his speed could have been as high was 75 mph. Yergin calculated that Christopher's pickup truck skidded 231.9 feet. Yergin agreed that Christopher was speeding, lost control of his pickup truck, and collided with the recycling truck entirely in Johnson's lane of travel. Yergin testified the movement of Christopher's pickup truck to the right happened "very, very quickly," in less than a second, "and then he immediately shoots over across into [Johhnson's] lane." Yergin estimated that Christopher's pickup truck was in Johnson's lane for no more than a second and a half before the collision. Yergin agreed that once Christopher's pickup truck entered Johnson's lane, the collision was unavoidable no matter how hard Johnson applied the brakes on the recycling truck.

According to Johnson, it was still dark and was cold and windy the day of the accident. Johnson was driving down Stewart Road in Galveston when he saw

6

approaching headlights. "[I]n a matter of seconds, the truck swerved and did a little swerve and then it just started fishtailing sideways." It appeared to Johnson the pickup truck sped up after the driver lost control. Johnson hit his brakes and moved to the right to try and avoid an accident. Johnson applied his brakes when he saw the pickup truck coming into his lane. According to Johnson, he did not have time to react. Johnson testified he was almost at a complete stop when the accident occurred. Looking back, Johnson could not identify anything that he could have done differently to avoid the accident. Johnson testified that he was not speeding but was unaware the speed zone increased from 35 mph to 45 mph just before the location where the accident occurred.

Johnson's interview with Sergeant Kylen was admitted into evidence. Johnson stated:

- "I guess he must have blacked out and pressed the gas and came all the way across and I couldn't avoid him."
- "I guess he blacked out or whatever, mashed the gas and started coming faster. And I, I couldn't avoid him and I just braced for the impact and I t-boned him on the right side."

Sergeant Kylen stated, in the interview, "If you had been 30 seconds later he would have spunned [sic] in front of you, if you would have been 30 seconds faster he would have spunned [sic] behind you."

## ANALYSIS

We have reviewed the entire record and conclude there was ample evidence introduced at trial to support the jury's failure to find Johnson was negligent. *See Reinhart*, 906 S.W.2d at 473. The only evidence to the contrary was Yergin's opinion that Johnson could have braked "harder" and thereby avoided the accident. However, the jury rejected this theory of Johnson's negligence. We cannot attribute their decision to the new-and-independent-cause instruction when the charge

7

included a sudden-emergency instruction that was supported by the testimony of Johnson and Yergin. *See id.* at 474.

There is nothing in the record to suggest the jury, in any way, based its verdict on the new-and-independent-cause instruction. *See id.* Accordingly, a rational trier of fact could have concluded that appellant failed to prove Johnson was negligent and answered the negligence question negatively without regard to the new-and-independent-cause instruction. *Id.* at 473–74 (holding submission of an unavoidable accident instruction was not reversible error when the defendant introduced ample evidence to support the jury's failure to find negligence).

In light of the entire record and the instruction regarding sudden emergency, we conclude the trial court's submission of the new-and-independent-cause instruction, if erroneous, was harmless. Appellant's issue is overruled and the judgment of the trial court is affirmed.


/s/ John Donovan
   Justice


Panel consist of Justices Boyce, Donovan and Wise.