# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00245-CV

**Shirley Harris, Appellant**

**v.**

**Tomas Vazquez, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-05-287328, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Shirley Harris appeals from a take-nothing judgment in her suit for damages she allegedly incurred in an automobile collision with Tomas Vazquez. The judgment was based on a jury finding that Vazquez's negligence had not been a proximate cause of the collision. Harris brings two issues on appeal challenging the factual sufficiency of the evidence supporting the jury's verdict and the trial court's submission of an "unavoidable accident" instruction with the negligence issue. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that the collision occurred on Austin's Oak Springs Road near its intersection with Airport Boulevard. It is undisputed that Harris's vehicle, while traveling westbound on Oak Springs Road, struck Vazquez's vehicle as Vazquez was exiting a restaurant

parking lot on the north side of Oak Springs Road and attempting to turn left so as to travel eastbound. The collision occurred at approximately 11:00 on a Sunday morning.

Both Harris and Vazquez testified at trial and provided conflicting accounts of how the collision occurred. According to Harris, as she was driving westward on Oak Springs and approaching the intersection with Airport Boulevard, "there was nothing in the road" blocking her view. There were "no obstructions," and the road was "smooth" and "flat." Furthermore, Harris testified that the weather was sunny and visibility was good. Harris estimated that she was traveling between 20 to 25 miles per hour in a 30-miles-per-hour zone.

Harris recounted that, as she was approaching the intersection,

> [T]here was a vehicle, a truck, pulling out of the restaurant [parking lot]. I could see him, because like I say, there was nothing blocking my view. . . . He was—he looked to his right. I was coming from his left. He did not turn and look to his left. So as he came out in front of me, my car—we collided on the—on the driver's side. . . .

Harris added, "He was making his turn. He was making his left-hand turn in front of me, and that's when I jammed on my brakes. He was . . . turning left in front of me, and I hit his left bumper, left—above his left tire." Harris further testified that she was not aware of any other vehicles trying to exit the parking lot. Harris also observed a male passenger in Vazquez's truck. On cross-examination, Harris testified that when the collision occurred, she was traveling on the "left" of the westbound lane of Oak Springs Road.[1]

---

[1] It is unclear from the record exactly where in the road Harris was located when the collision occurred. Harris designated only a partial record for review, *see* Tex. R. App. P. 34.6(c), and most of the trial exhibits, including photographs and diagrams of the road, were not included. The record is also unclear as to whether Oak Springs Road at the accident site has two lanes, two lanes in each direction, or two through lanes plus a turn lane.

In contrast to Harris, Vazquez testified that when he was pulling out of the restaurant parking lot, there were two cars behind his vehicle, and, to his left, "there was a big truck" parked on the street that was obstructing his view. When asked to describe the truck that was obstructing his view, Vazquez recounted, "It was a big truck. The ones that have—the one that has eight tires, four in the back and [four] in the front." When asked if he could recall the color of the parked truck, Vazquez testified, "Well, no. It was kind of green. I just saw the big, you know, bulk." Vazquez did not see anyone inside the truck, and he testified that he assumed the truck's owner was inside the restaurant.

Referring to a photograph of the location where the collision occurred, Vazquez recounted:

> [M]y truck was right here, and I was pulling out slowly. And I was making the effort to see towards there. And then when I pulled just a little bit more like that, I saw the car coming. Behind me there was the other one, and then I just stayed thinking, well, I hope this one will stop so it won't hit me. And that's it.

Vazquez added:

> I was looking because I want to turn left, yes. But I was pulling out straight like this. I was pulling out very slowly because I wanted to see, because that truck was in my way, and I couldn't see. And when I pull out just a little bit more, that's when I saw the car coming.

Vazquez denied Harris's allegation that he did not look to his left when he was pulling out. He added that he was wearing his glasses, was not eating or drinking anything, and was not using his cell phone. He further explained that he was on his way home from the restaurant and

3

was "rested" and not in any type of hurry. Vazquez also testified, contrary to Harris's testimony, that he was alone in his truck.

Vazquez further testified that, as Harris's car came toward him, he had wanted to back up but was unable "because there were two other cars right behind me. I couldn't move back." On cross-examination, Vazquez testified that he had pulled out in the road only to the extent that his front tires were in the street, and no further. According to Vazquez, his vehicle was completely stopped when Harris's vehicle collided with it.

Vazquez also testified that because Harris applied her brakes when she saw him, the collision occurred "very slowly" and "hardly did any damage" to his truck, bending a portion of his front bumper near the wheel on the driver's side of his vehicle but not damaging his tires or alignment. Vazquez agreed with his counsel's characterization of the collision as a "minor accident." In fact, there was evidence that the approximate amount of damage to Vazquez's vehicle was $300, while the approximate amount of damage to Harris's vehicle was $800. Both vehicles were driveable after the collision.

After Vazquez testified, Harris was recalled to the stand. Harris "took issue" with "everything that Mr. Vazquez said." In particular, she explained:

> I'm going westbound. I'm in the center lane. If Mr. Vazquez was pulling out of that parking lot, like he stated, and he stopped, there is no way that I could have gone from the center lane to my right lane to hit his vehicle. . . . There was no way that he couldn't have seen me coming westbound, had he looked to his left. This is absolutely ridiculous.

4

There was also a dispute during trial as to the location of damage to Harris's vehicle. No photographs had been taken of Harris's vehicle following the collision. Instead, the parties used what counsel termed "rudimentary" drawings to depict the damage. Harris testified that the damage was on the driver's side of her vehicle, while Vazquez testified that he recalled the damage to Harris's vehicle being on the passenger's side. On cross-examination, Vazquez questioned Harris extensively as to how only the driver's side of her vehicle could have been damaged when Vazquez's vehicle had pulled out from her passenger's side. Harris explained that Vazquez's vehicle had been in the process of making a left turn in front of Harris and was not impacted until it had cleared her passenger side.

At the conclusion of trial, the trial court submitted an issue inquiring as to whether the negligence, if any, of Vazquez or Harris had been a proximate cause of the occurrence. It also conditionally submitted issues on comparative fault and damages. The trial court provided the jury definitions of negligence, ordinary care, and proximate cause, as well as an "unavoidable accident" instruction—"an occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it."[2] The jury found that neither Harris's nor Vazquez's negligence had been a proximate cause of the occurrence, and did not reach the remaining issues. The trial court rendered judgment on the jury's verdict and ordered that Harris take nothing. Harris filed a motion for new trial, which the trial court denied. This appeal followed.

---

[2] This instruction tracks the unavoidable accident instruction in the Texas Pattern Jury Charges. *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts PJC 3.4 (2003).

**DISCUSSION**

Harris's two issues on appeal are closely related. What she terms "the gravamen of this appeal" is her contention that "[t]he only evidence in this case tends to establish that one or the other party to the collision was negligent (or both), but not neither." Harris urges that the unavoidable accident instruction "invited this error."

**Charge error**

We will first address Harris's issue complaining of the unavoidable accident instruction. We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Bryan v. Watumull*, 230 S.W.3d 503, 508 (Tex. App.—Dallas 2007, pet. denied). A trial court does not abuse its discretion in submitting an instruction if there is any support in the evidence for it. *Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998); *Banks v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P.*, 233 S.W.3d 64, 70 (Tex. App.—Dallas 2007, pet. denied).

An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995). "The instruction is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or *obstruction of view*, or to resolve a case involving a very young child who is legally incapable of negligence." *Id*. (emphasis added). "Unavoidable accident is not an alternative theory of liability but is 'an inferential rebuttal issue that requires plaintiffs to prove the

6

nonexistence of an affirmative defense' or 'seeks to disprove the existence of an essential element submitted in another issue.'" *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 756 (Tex. 2006) (internal citations omitted).

Although inferential rebuttal instructions "do not always further the jury's understanding of the defense or conform to current broad-form practices," the supreme court has explained that "they do serve a legitimate purpose":

> The standard broad-form question is structured such that the jury is not asked whether any particular person was negligent, but whether 'the negligence, if any,' of particular persons proximately caused an occurrence. There is at least a potential implication in this phraseology that the occurrence was caused by someone's negligence. We see no harm in explaining to the jury through an inferential rebuttal instruction that no such implication is intended.

*Dillard v. Texas Elec. Coop.*, 157 S.W.3d 429, 433 (Tex. 2005) (internal citation omitted). More recently, the supreme court observed, "The truth is, sometimes accidents are no one's fault, and an unavoidable accident instruction, like the one in this case, simply explains to the jury that they are not required to find someone at fault." *Bed, Bath & Beyond, Inc.*, 211 S.W.3d at 757.

Harris contends that, as a matter of public policy, the unavoidable accident instruction should be applied only with regard to "nonhuman" conditions that are "sudden" or "unexpected," not "commonly encountered circumstances" such as a parked vehicle. In the past, the unavoidable accident instruction has been associated with "nonhuman" or environmental conditions, acts of very young children legally incapable of negligence, or other "peculiar" circumstances. *See Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex. 1992); *see also Reinhart*, 906 S.W.2d at 472-73 (sharing the "reservations" of courts in other jurisdictions that had either prohibited or "severely

7

limited the circumstances" under which unavoidable accident instruction may be given). More recently, however, the supreme court has explained that "the instruction's language is not so limiting. The instruction merely informs the jury that it may consider causes of the occurrence other than the negligence of the parties." *Dillard*, 157 S.W.3d at 433; *see also Bed, Bath & Beyond, Inc.*, 211 S.W.3d at 760 (Brister, J., concurring) ("It is true the unavoidable-accident instruction has historically been associated only with defendants who blame children or the weather, but (as we noted recently) that is not what it says. All it says is that accidents may be nobody's 'fault' in the legal sense." (citing *Dillard*, 157 S.W.3d at 433)). Following recent supreme court guidance, we reject Harris's narrow view regarding the unavoidable accident instruction.

In this case, Vazquez testified that his view of oncoming traffic was obstructed by a truck that was parked on the side of the street. Because the evidence shows that neither Vazquez nor Harris were responsible for this obstruction, Vazquez's testimony is at least some evidence that the collision was "an event not proximately caused by the negligence of any party to it." *See Reinhart*, 906 S.W.2d at 472. Again, a trial court does not abuse its discretion in submitting a jury instruction if there is "any support" in the evidence for it. *Knighten*, 976 S.W.2d at 676. On this record, we hold that the trial court did not abuse its discretion in submitting an unavoidable accident instruction.

Alternatively, any error in submitting the instruction was harmless. An incorrect jury instruction requires reversal only if it "was reasonably calculated to and probably did cause the rendition of an improper judgment." *Bed, Bath & Beyond, Inc.*, 211 S.W.3d at 757 (quoting *Reinhart*, 906 S.W.2d at 473). On this record, we cannot conclude that the unavoidable accident

instruction probably caused an improper judgment, for reasons similar to the reasons discussed by the supreme court in *Bed, Bath & Beyond, Inc.* First, the instruction simply reminded the jury that it could consider the possibility that the vehicles collided for reasons other than Harris's or Vazquez's negligence (for example, the negligence of the owner of the truck allegedly parked on the side of the street). "That kind of a jury instruction does not by itself amount to harmful error." *Id*.

Second, on this record, it is reasonable to conclude that the jury simply found that Harris had failed to carry her burden of proof. Like the defendant in *Bed, Bath & Beyond, Inc.*, Vazquez defended this case largely by attacking Harris's credibility. *See id*. at 757-58. Vazquez extensively attempted to cast doubt upon Harris's recollection of how the collision occurred and how her vehicle was damaged. The nature, extent, and cause of Harris's injuries were also vigorously contested during trial. For these and other reasons, the jury could have simply rejected Harris's version of the facts. Especially where Harris's claim rested largely on her own testimony, the jury could have found, without regard to the unavoidable accident instruction, that Harris failed to prove by a preponderance of the evidence that Vazquez's negligence was a proximate cause of the collision. Harris has not made a showing that, without the unavoidable accident instruction, the verdict would have been in her favor. We conclude that the evidence in this case fails to indicate that "the unavoidable accident instruction in any way caused the case to be decided differently than it would have been without it." *Id*. (quoting *Reinhart*, 906 S.W.2d at 473).

We overrule Harris's second issue.

**Factual sufficiency**

In her first issue, Harris asserts that the jury's verdict is against the great weight and preponderance of the evidence. As noted, Harris contends that there is insufficient evidence that *neither* Vazquez nor Harris were negligent. The great weight and preponderance of the evidence, according to Harris, established that *either* Vazquez or Harris were negligent. However, it is the jury's finding that *Vazquez*, the defendant, was not negligent on which the trial court's judgment rests. We will construe Harris's issue to be a challenge to the factual sufficiency of the evidence supporting the jury's failure to find that Vazquez was negligent.

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Texas Dep't of Assistive & Rehabilitative Servs. v. Howard*, 182 S.W.3d 393, 407 (Tex. App.—Austin 2005, pet. denied). We consider all of the evidence and will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 243. The jury remains the sole judge of witnesses' credibility and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Harris points to her testimony that Vazquez did not look to his left before entering the street from the parking lot.[3] Vazquez testified that he looked in both directions before he pulled

---

[3] *See County of Dallas v. Poston*, 104 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.) (citing Tex. Transp. Code Ann. § 545.256(3) (West 1999)) (explaining duty to yield right-of-way to oncoming vehicles when entering roadway).

out. It was the jury's province to assess the credibility of each witness and resolve this and other conflicts in the evidence. *See McDonald v. Dankworth*, 212 S.W.3d 336, 345-46 (Tex. App.—Austin 2006, no pet.). Vazquez recounted that there was a truck obstructing his view of oncoming traffic, recounting details about its appearance, including that it had eight wheels and was "big," "bulk[y]," and "kind of green." Vazquez testified that he pulled out of the parking lot "very slowly." When he saw Harris's vehicle approaching, Vazquez explained that he was unable to back up because there were two cars immediately behind him. Vazquez added that he had been "rested" and not in a hurry, was wearing his glasses, was not on his cell phone, was alone in his vehicle, and was not eating or drinking anything while driving. On this record, we cannot say that the jury's failure to find that Vazquez's negligence was a proximate cause of the collision was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Waring v. Wommack*, 945 S.W.2d 889, 894-95 (Tex. App.—Austin 1997, no writ) (affirming jury's finding that defendant was not negligent in case involving collision between plaintiff bicyclist and defendant motorist attempting left turn); *Gomez v. Adame*, 940 S.W.2d 249, 252 (Tex. App.—San Antonio 1997, no writ) (affirming jury's finding that defendant was not negligent in case involving allegation that defendant failed to maintain proper lookout prior to entering roadway); *Madara v. Marshall*, 578 S.W.2d 787, 791 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (affirming jury's finding that defendant was not negligent in case involving collision between plaintiff motorist traveling westbound and defendant motorist attempting left turn).

We overrule Harris's first issue.

11

## CONCLUSION

Having overruled Harris's issues on appeal, we affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   June 5, 2008