**Opinion issued August 1, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00734-CV

————————————

### CITY OF HOUSTON, Appellant

### V.

### SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee

---

**On Appeal from County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1057740**

---

### MEMORANDUM OPINION

Southwestern Bell Telephone Company sued the City of Houston for negligence based on damage caused to their duct run and cable while the City of Houston repaired a water main. The jury found the City of Houston negligent and awarded damages. On appeal, the City of Houston argues (1) the trial court lacked

subject-matter jurisdiction over Southwestern Bell's negligence claim based on governmental immunity and (2) the trial court abused its discretion by including instructions that allowed the jury to determine liability on grounds for which immunity had not been waived.

We affirm, in part, and reverse and remand for a new trial, in part.

## Background

The City of Houston learned about a water main break in the city on March 1, 2013. Jennifer Ramirez, a city employee, posted notice of its intent to repair the water main, indicating that repairs would begin the next day. The next day, another city employee, Prince Mackey, went to the location with two other workers, Sidney Christian and Quaan Motley, to repair the water main. At the time of trial, Mackey had been a City employee for 23 years, a foreman for nine years, and had been working in the City's water operations division for 13 years. Christian had been working in the City's water operations division for four years, and Motley had been working in the water operations division for six years.

Approximately 10 to 20 feet from the excavation site, a sign posted on a utility pole warned of the presence of underground cables and displayed the AT&T logo,[1] along with the universal sign for "do not dig." Christian testified that the utility pole was between the City's work truck and the excavation site and that the city

---

[1] It was undisputed at trial that Southwestern Bell uses the AT&T logo.

2

employees walked past the utility pole several times. Mackey, Christian, and Motley all testified that they did not look at the pole or read the posted warning sign.

Mackey operated a concrete breaker to break up the street in the area where the repairs would be made. He then operated a backhoe to excavate the area around the water main. Each time Mackey excavated one to two feet of dirt, he would stop so that Christian could test the ground for utility lines with a "probing rod." As Mackey dug, Christian and Motley watched to ensure that Mackey was not hitting anything with the backhoe. It took an hour and a half to complete the excavation.

During this time, Southwestern Bell suffered damage to a hard-clay duct run and a cable located within the run. The damage was in the same area as the water main break.

After repairing the damage, Southwestern Bell filed suit against the City, asserting a claim of negligence. Southwestern Bell asserted that the City had failed to wait 48 hours from providing notice to making the repairs and that such notice was necessary under the Texas Utilities Code. Southwestern Bell also alleged that the City's operation of the backhoe was negligent because the City's employees failed to ascertain what underground utilities were in the area before digging. Specifically, Southwestern Bell argued that: (1) the City failed to provide 48 hours' notice to Southwestern Bell before excavating; (2) the City's employees had a duty to look for signs of and locate underground utilities at the excavation site before and

3

during the excavation process; (3) Southwestern Bell's aerial cable was attached to the nearby utility pole, and therefore the City's employees should have been aware that the same cable ran underground near the excavation site; and (4) the City's employees were aware of and walked past, but did not "look at," the utility pole on which the warning sign was posted.

Southwestern Bell presented evidence at trial indicating that, because the duct run surrounding the damaged cable was "almost as hard as concrete," only a "powerful machine," and not a hand shovel, could have damaged the cable. Jeremy Cutbirth, a Southwestern Bell employee who has been installing and repairing similar cables for 16 years, testified at trial that, "As hard as that duct run is and as tough as that cable is, you're not going to do that with a shovel . . . . There is no way you're going to be digging with a shovel and accidentally go all the way through it and rip a cable apart . . . . It's impossible." He testified further that the duct run, which was made of baked clay tile, is "very hard" and "almost like cement." An air-pressure warning system located within the duct run notified Southwestern Bell of damage to the cable in the same location where the City excavated the water main. Thus, Cutbirth testified, the cable must have been damaged by the City's backhoe.

At trial, Mackey and Christian acknowledged that other underground utilities, such as natural gas lines and electric cables, are typically located in the same general area as water mains. They testified that the workers are supposed to look for all

4

indications of underground utilities before excavating because utilities are sometimes unmarked. Christian and Motley testified further that they never noticed the duct run containing Southwestern Bell's cable.

For the charge, Southwestern Bell requested instructions be included that quoted two statutes regarding the notice requirements under the Utilities Code.[2] The City objected to these instructions. The trial court overruled the objections and included the statutes in the charge.

## Governmental Immunity

In its first two issues, the City challenges the trial court's subject-matter jurisdiction over Southwestern Bell's claim for negligence. The City argues the trial court lacked subject-matter jurisdiction based on governmental immunity.

## A. Standard of Review

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law, which we review de novo. *See Miranda*, 133 S.W.3d at 226.

The *Miranda* standard "allows the state in a timely manner to extricate itself from litigation if it is truly immune." *Id.* at 228. When the matter of immunity

---

[2] *See* TEX. UTIL. CODE ANN. §§ 251.151(a), 251.152(2)(A)–(B) (West 2016).

5

depends upon the resolution of disputed facts that implicate the merits of the claim or defense, however, the issue must be resolved by the fact finder, "preserv[ing] the parties' right to present the merits of their case at trial." *Id.*

When, as here, a jurisdictional challenge under the Texas Tort Claims Act is raised after a trial on the merits, the standard of review stated in *Miranda* does not apply. *Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694, 704 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Instead, when the jury's findings bear on a determination of the trial court's subject-matter jurisdiction, the appropriate standard of review is for the legal sufficiency of the evidence to support the fact finder's determinations. *Id.*

The Supreme Court of Texas has held the same for cases reviewing subject-matter jurisdiction under the Texas Commission on Human Rights Act, which, like the TTCA, waives sovereign immunity for certain claims against government entities. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015). When jurisdictional challenges under the TCHRA are raised after a trial on the merits, "we simply inquire whether the evidence is legally sufficient to support the jury's ultimate finding." *Id.* (citing *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)) (quotation marks omitted). We accordingly review the trial court's determination of immunity under a legal-sufficiency standard of review. *See id.*

As part of this issue, the City also challenges the legal and factual sufficiency of the jury's determination that it was negligent. Because the jury's determination of negligence implicated the issue of immunity, *Miranda*, 133 S.W.3d at 228, we will consider the legal sufficiency of the City's immunity together with the legal and factual sufficiency of the jury's determination of negligence.

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We credit favorable evidence if a reasonable juror could and disregard contrary evidence if a reasonable juror could not. *Id.* at 827.

In a factual-sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the

7

appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When it challenges an adverse finding on an issue on which it had the burden of proof at trial, the appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

## B.  Analysis

The City argues that Southwestern Bell failed to offer sufficient evidence of negligence by a city employee in operating or using motor-driven equipment that caused Southwestern Bell damages. To prove negligence, Southwestern Bell was required to establish the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Nabors Drilling, U.S.A. Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). To assert a claim under section 101.021(1)(A) of the TTCA, Southwestern Bell was required to establish that its damages arose from the City's negligent operation of motor-driven equipment—here, the backhoe. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) (West 2011). If Southwestern Bell

8

raised legally-sufficient evidence to support both the common law elements of negligence and that its damages arose from the City's operation or use of the backhoe, then the City's sovereign immunity was waived under the TTCA, and the jury's verdict was proper on that theory of recovery. *See Prairie View*, 180 S.W.3d at 704. If the evidence was legally insufficient, the trial court lacked subject-matter jurisdiction to hear the case. *Id; see also Miranda*, 133 S.W.3d at 225–26.

For the existence of a duty, the Supreme Court of Texas has held that a party that makes "an extraordinary use of the surface," such as breaking up a portion of a road and excavating underneath it, bears a duty "to avoid striking utilities rightfully within a road or to make a reasonable inquiry as to the location of lines which may be encountered." *Pioneer Natural Gas Co. v. K & M Paving Co.*, 374 S.W.2d 214, 223 (Tex. 1963); *accord Gen. Tel. Co. of Sw. v. Blacksher*, 742 S.W.2d 465, 467 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (noting contractor excavating water main had duty to avoid striking or make reasonable inquiry about location of telecommunications cable); *see also Kilburn v. Fort Bend Cty. Drainage Dist.*, 411 S.W.3d 33, 40–42 & n.3 (Tex. App.—Houston [14th Dist.] 2013) (holding plaintiff who alleged that county excavated in wrong location sufficiently pleaded injury "arising from use of motor-driven equipment" within meaning of the TTCA).

For breach of this duty, the evidence established that a cable ran above ground to the pole that contained Southwestern Bell's warning sign. The cable did not

continue above ground from the pole, visibly indicating that the cable must have continued underground.

Mackey, the city employee who operated the backhoe on the day in question, testified at trial that he was aware that utilities such as natural gas and electric lines are generally located in the same area as underground water mains. Mackey also testified that, when excavating, the workers are supposed to look for other indications of utilities such as manholes, pedestals, and risers, because underground utilities are sometimes unmarked.

Mackey and Christian testified that they were excavating nearby and walked past, but did not look at, the utility pole on which Southwestern Bell's warning sign was posted. Christian testified that he saw the "silver thing" (the warning sign) on the utility pole. When asked whether he looked at the sign, he responded, "Why would I?" Motley testified that the workers did not walk around the area to look for indications of unmarked utilities.

The City argues there was evidence in the record showing that their employees used probing rods in their efforts to find other utilities underground. The evidence on this point is mixed. Mackey, the operator of the backhoe, testified that the other men used probing rods to look for the water main as well as other utilities in the area he was digging. In contrast, Christian testified that he used the probing rod only to look for the water main. The City's attorney asked, "At any point did you see or

10

probe for any other utility other than the City's?" Christian responded, "No." Motley testified that he did not use the probing rods during that excavation. He testified that Christian was the only one to use a probing rod for that job. Accordingly, the jury could have reasonably determined that the City did not attempt to locate any other utilities during the excavation process.

Viewing the evidence in the light most favorable to the verdict, the jury reasonably could have found that the City breached its duty to make a reasonable inquiry as to the location of, and to avoid striking, underground utilities. *See Pioneer*, 374 S.W.2d at 223. We therefore hold that the evidence is legally and factually sufficient to support the jury's determination that the City breached a duty it owed to Southwestern Bell. *Keller*, 168 S.W.3d at 821–22; *Nabors*, 288 S.W.3d at 404.

Finally, we turn to the proximate cause of the damages. Proximate cause requires proof of both cause in fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). A tortious act is a cause in fact if it is "a substantial factor in causing the injury" and one "without which the injury would not have occurred." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010) (citation omitted).

Southwestern Bell's employee, Cutbirth, testified that the clay duct surrounding its cable was almost as hard as concrete. He testified that the duct could

not have been broken by shovels but must have been broken by the backhoe. "There is no way you're going to be digging with a shovel and accidentally go all the way through it and rip a cable apart . . . . It's impossible."

An air-pressure warning system located within the duct run notified Southwestern Bell of damage to its cable in the same location where the City excavated the water main. The jury, therefore, reasonably could have concluded that the City's operation of the backhoe was the cause in fact of the damage to Southwestern Bell's cable.

Mackey testified that utilities are not always marked and that the workers expect multiple underground utilities to be located in the same area underneath a road or right-of-way. The jury could have found that the injury caused to Southwestern Bell was foreseeable. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985) ("Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others.").

Evidence of proximate cause also bears on the City's liability under the TTCA. An injury "arises from" the use of motor-driven equipment when there is a "nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). The threshold for a sufficient nexus is "something more than actual

cause but less than proximate cause." *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015). "Accordingly, a plaintiff can satisfy the arising from standard by demonstrating proximate cause." *Id.* (quotation marks omitted). Because there is evidence to support the proximate cause of the damages, there is evidence to support waiver of the City's immunity. *See id.*

We hold the evidence is legally and factually sufficient to support the jury's verdict that the City was negligent. Accordingly, we hold the evidence is legally sufficient to support the determination that Southwestern Bell's injury "arose from" the operation of motor-driven equipment. *See Miranda*, 133 S.W.3d at 228; CIV. PRAC. & REM. § 101.021(1)(A).

We overrule the City's first two issues.

## Jury Charge

In its third issue, the City argues that the trial court abused its discretion by including instructions that allowed the jury to determine liability on grounds for which immunity had not been waived.

### A. Standard of Review

We review the trial court's submission of jury instructions for an abuse of discretion. *See Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the

13

established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). When an incorrect jury instruction was given, we reverse only if the instruction "'was reasonably calculated to and probably did cause the rendition of an improper judgment.'" *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006) (quoting *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995)); *see also* TEX. R. APP. P. 44.1(a)(1). We examine the entire record to evaluate whether the instruction probably caused the rendition of an improper verdict. *Urista*, 211 S.W.3d at 757.

## B.    Analysis

The City argues that the trial court abused its discretion by including instructions that allowed the jury to determine liability on grounds for which immunity had not been waived. The trial court included portions of the Texas Utilities Code in the jury charge at Southwestern Bell's request, and over the City's objections. *See* TEX. UTIL. CODE ANN. §§ 251.151(a), 251.152(2)(A)–(B) (West 2016). Southwestern Bell asserted in its closing argument that the City failed to wait 48 hours after providing notice before excavating, and that such notice was required by the Utilities Code. *See id.* § 251.151(a). The statutory excerpts immediately preceded the first question in the jury charge: "Did the negligence, if any, of the City of Houston proximately cause the occurrence in question?"

14

The inclusion of the statutory excerpts in the jury charge, and the excerpts' placement, indicate that the jury was permitted to find the City liable for negligence based on its failure to comply with the Utilities Code. The Supreme Court of Texas has rejected basing governmental liability on such conduct, holding, "[T]he tortious act alleged must be related to the defendant's operation of the [equipment] rather than to some other aspect of the defendant's conduct." *Ryder Integrated*, 453 S.W.3d at 928. For any alleged tortious act other than operation of the equipment in question, "there is no immunity waiver." *Id.* An example provided by the court highlights this ruling. "For example, a driver's failure to supervise children at a bus stop may rise to the level of negligence, but that shortcoming cannot accurately be characterized as negligent operation of the bus." *Id.*

As the City points out, there is no waiver of liability for any failure to provide proper notice under the sections of the Utilities Code excerpted in the charge. *See* UTIL. § 251.151(a); *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006) (holding courts strictly construe statutes waiving sovereign and governmental immunity). A finding that the City was negligent for failing to provide adequate notice, then, would not waive the City's governmental immunity. We hold, therefore, that the inclusion of the statutory excerpts in the jury charge was error.

Because of the erroneous instruction, it is unclear whether the jury found the City negligent based on its use of the backhoe or on its failure to comply with the

15

Utilities Code. Because the jury may have found the City liable on grounds for which the City's sovereign immunity was not waived, the instruction was harmful. *Urista*, 211 S.W.3d at 757; *see also* TEX. R. APP. P. 44.1(a)(1).

We sustain the City's third issue.

## Conclusion

We affirm the trial court's determination of waiver of governmental immunity. We reverse the trial court's judgment on negligence and remand for a new trial.

 

Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Brown.