In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00309-CV

_____

BAM HEAVY EQUIPMENT AND REPAIR, LLC AND
BERT T. JOHNSON, Appellants

V.

MICHAEL E. JACKSON, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 18-03-03481-CV

MEMORANDUM OPINION

Michael E. Jackson sued BAM Heavy Equipment and Repair, LLC and Bert

T. Johnson for breach of contract regarding BAM's failure to continue making

payments to Jackson, even after he stopped working with the company. [1] A jury

found in Jackson's favor and awarded him $117,318. BAM appeals the judgment in

---

[1] Johnson filed a notice of appeal but abandoned his appeal before any opinion issued in this case.

Jackson's favor.[2] In five issues, BAM complains: (1) Jackson failed to obtain a finding that he was a member of BAM, a controlling issue under Tex. R. Civ. P. 279; (2) the evidence was legally and factually insufficient to show that Jackson was a member of BAM, and therefore, he is not entitled to any distributions from the company; (3) Jackson's evidence of damages was legally and factually insufficient to support the judgment; (4) the charge contained *Casteel* error because Question No. 1 contained an instruction on ratification when Jackson did not affirmatively

---

[2] Following the entry of the Final Judgment, BAM filed a timely motion for new trial, which the trial court overruled. BAM then timely appealed. However, more than thirty days after denying the motion for new trial and after the expiration of the trial court's plenary power, the trial court entered a "Nunc Pro Tunc Modified Final Judgment" awarding costs to Jackson against BAM and Johnson jointly and severally where the original Final Judgment indicated costs were "to be borne by the party incurring same," and the jury's verdict did not address Johnson's liability. It also changed the date the prejudgment interest began to accrue. The judgment nunc pro tunc noted that it "modifies" the judgment in these two respects. The amendments to the Final Judgment were not corrections of clerical errors, but instead, modifications to the judgment. *See* Tex. R. Civ. P. 316 (allowing for correction of clerical errors only through judgment nunc pro tunc); *see also In re R.P.T.*, No. 04-03-00475-CV, 2005 WL 418220, at *3 (Tex. App.—San Antonio Feb. 23, 2005, pet. denied) (mem. op.) (characterizing error as judicial rather than clerical when trial court awarded costs in a nunc pro tunc after plenary power expired where original judgment rendered costs were to be borne the party who incurred them). Because it was executed after the trial court's plenary power had expired and corrected a judicial rather than clerical error, the "Nunc Pro Tunc Modified Final Judgment" is void. *In re R.P.T.*, 2005 WL 418220, at *3; *see also State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) (citations omitted) ("Judicial action taken after the court's jurisdiction over a cause has expired is a nullity."). Accordingly, our opinion addresses the original Final Judgment entered by the trial court in this cause. *See id.* (noting where order was void, original final order remained intact).

plead ratification and Question No. 2 allowed the jury to find that BAM breached an unspecified agreement though the jury made the finding only as to the alleged amended operating agreement; and (5) the trial court abused its discretion by admitting evidence of settlement negotiations he had with BAM and a recording. We affirm.

## I. Background

Jackson married Florence Dees in approximately 2012. Florence's daughter and Jackson's stepdaughter, Carrie, was married to Johnson. A heavy equipment mechanic, Johnson wanted to start his own business. In late 2013, Jackson and Florence agreed to help Johnson start his own company, BAM Heavy Equipment and Repair.

They decided to form an LLC, and Johnson, Jackson, and Florence used LegalZoom to prepare the formation documents. Jackson loaned Johnson money to purchase four trucks to be paid back at interest rates between eight and nine percent. The money loaned for the vehicles totaled $330,000 and was secured by four promissory notes. Jackson also deposited $35,500 when they opened BAM's bank account. This money was eventually rolled into the last truck promissory note because Johnson indicated he wanted to pay that money back. Jackson testified that he set aside $46,000 to ensure the company had enough money to pay Johnson's

3

salary, but he never had to use that money. There was no dispute at trial that Johnson repaid the truck loans and the additional $35,500.

At trial, Jackson testified that Johnson initially offered to make Jackson a partner in the business with an ownership interest, but Jackson declined. He said he and Florence wanted to help get the company going the first twelve to fifteen months, then leave it in Johnson's hands. According to Jackson, the parties settled on Johnson being the managing member with full ownership interest. Jackson explained that he and Florence would also be members but would not have an ownership interest in BAM. Jackson also testified that despite having executed an Original Operating Agreement (the "Original Agreement") a few days prior, on December 27, 2013, the parties executed an "Amendment to the BAM Operating Agreement" (the "Amended Agreement") whereby BAM would pay Jackson and Florence an annual "dividend" equivalent to four percent of BAM's gross income.[3] This payment was at the center of the parties' dispute. This Amended Agreement referred to Jackson and Florence as "investors" rather than members. Johnson denied signing the Amended Agreement.

Jackson testified that he volunteered to basically help Johnson perform any task he needed done so Johnson could focus on working and getting business.

---

[3] While the parties referred to it as the original operating agreement, the document is titled "Company Agreement."

4

Jackson explained that this included helping secure insurance, running parts, and picking up Johnson's kids from school, among other things. Florence started out keeping BAM's books. Neither Jackson nor Florence took a salary for their work. Johnson testified that the quarterly payments were for them doing the books and only while they worked for the company. However, BAM paid the "dividend" in 2014 and 2015 without incident but did so quarterly rather than annually. Johnson admitted he was aware the checks had been written and saw the money come out of the account but denied having approval authority over the checks. Yet, Johnson also testified that he thought the four percent payment was based on gross income rather than gross profit. In April 2016, Jackson and Florence received the last dividend check.

In 2016, Jackson and Florence were going through a contentious divorce, and Johnson approached them about reducing the payment from four percent to two percent of BAM's gross income, with each of them getting one percent. Jackson testified that he was agreeable to that and told Johnson to have his lawyer draft something up. Johnson said he did this because Florence threatened to sue him. When Jackson did not receive the quarterly BAM payment, he approached Johnson and inquired about it. Johnson advised that BAM would not be making the payments until a new agreement was signed and Florence and Jackson's divorce was finalized. Jackson testified that eventually, Johnson's lawyer sent over a new proposed

agreement reducing the payment to two percent; however, other terms changed he was not agreeable to, and a new agreement was not signed reducing the dividend. The changes included the payment being based on gross profit rather than gross income. Jackson alleged in his petition that because the parties did not execute a new agreement, the Amended Agreement remains in effect. The parties' testimony was consistent that the two percent reduction agreement was never finalized.

During this time, Jackson testified that things "weren't quite sitting right with me" which led him to surreptitiously record a February 7 meeting he had with Johnson about non-payment of the dividend. Over objection, the trial court admitted the entire recording, comprised of two separate conversations, which Jackson played a portion of for the jury. The trial court also admitted a transcript of one of the recorded conversations as evidence.

Jackson moved for directed verdict on BAM's counterclaim for fraud based on a lack of evidence of misrepresentation, which the trial court granted. BAM moved for directed verdict on Jackson's breach of contract claim arguing there was no evidence that a valid agreement existed, and Jackson failed to present any evidence of damages. The trial court denied BAM's motion for directed verdict. Specifically, the trial court noted that Plaintiff's Exhibit 17, a spreadsheet breaking down BAM's quarterly gross income from the second quarter of 2016 through the third quarter of 2018, coupled with the testimony and evidence that the dividend paid

to Jackson and Florence was four percent of gross income, provided sufficient evidence of damages. The trial court admitted this exhibit during pretrial, and BAM failed to object. Specifically, when asked if there were additional exhibits BAM could agree to preadmit, counsel responded that "[exhibit]17 are the numbers I gave him for gross income. I can't exactly object to those."

The Court's charge included instructions on ratification and implied ratification with Question 1, which addressed the existence of an agreement. During the charge conference, BAM objected to the submission of the contract questions, arguing that Jackson failed to prove the existence of a valid contract. BAM also objected to the instructions included with Question 1 regarding ratification. BAM further objected to Questions 1 and 2 as follows:

> [COUNSEL]: I object to the Question Number 1 and 2 of the Charge further, the wording of them. In Question Number 2, it says, Comply with the agreement. It doesn't have the definition of the agreement. Under Question 1, it does not have an end date to when the dividend would be paid, and I believe that is a -- is a fatal flaw in the question if my clients -- if the jury finds that my clients agree to pay a dividend.

With respect to omitted questions or issues, BAM objected as follows:

> [COUNSEL]: [A]s to questions that are not included on this jury charge, I object to the fact that Defendant's claim of forgery is not included in the jury charge for the promissory note, the bank documents, and the - - the W-9. There's clear and convincing evidence that those were forged by Mr. Jackson and they should be included on the jury charge as well as damages just for such.

The trial court overruled these objections as to Questions 1 and 2 and to the failure to include a proposed charge for BAM's counterclaim for forgery. In overruling these objections, the trial court noted that it had not received any proposed submissions.[4] However, the trial court ultimately included a question in the charge asking whether Jackson forged the Amended Agreement.

The jury returned a verdict in Jackson's favor. The jury found that: (1) Jackson and BAM agreed BAM would pay Jackson a dividend per the "Amendment to BAM Heavy Equipment & Repair Operating Agreement;" (2) BAM failed to comply with the Agreement; (3) Jackson was entitled to $117,318 in damages; and (4) the "Amendment to BAM Heavy Equipment & Repair Operating Agreement" was not forged. BAM moved for judgment notwithstanding the verdict, which the trial court denied.

## II. Issues One and Two: Membership Status and the Court's Charge

BAM first contends a fact issue existed regarding whether Jackson was a member of the LLC, and this was a "controlling issue" that required submission of the question to the jury. BAM asserts that Jackson failed to object to the court's omission of a question regarding his membership status at trial, and that because Jackson's member status required an affirmative finding, Jackson's failure to obtain

---

[4] The clerk's record reveals that BAM submitted a proposed charge on May 20, 2019 at 4:46 p.m. The only questions in BAM's proposed charge pertained to its forgery counterclaim.

8

such a finding is fatal to his case. In its second issue, BAM argues the evidence is legally and factually sufficient to support that Jackson was a member of BAM.

## A. Standard of Review

The trial court is required to submit jury questions in the jury charge raised by the pleadings and evidence. *See* Tex. R. Civ. P. 278. "When an element of a claim is omitted from the jury charge without objection and no written findings are made by the trial court on that element then the omitted element is deemed to have been found by the court in such manner as to support the judgment." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228–29 (Tex. 2011) (citing Tex. R. Civ. P. 279; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). Because there was no objection to the charge on the basis that it omitted an element of a claim and the trial court did not make findings on it, there is a deemed finding in support of the judgment. *See id.* at 229. "But just as with any other finding, there must be evidence to support a deemed finding." *Id.*

## B. Analysis

Despite being the party complaining of the judgment, BAM attempts to place the onus of objecting to the court's charge on Jackson by arguing that his breach of contract claim required an affirmative finding on his membership status in the LLC. We disagree. In essence, BAM's argument is that because Jackson is not a member of the LLC, the parties' agreement regarding payment of a combined four percent to

9

Jackson and Florence is void or unenforceable, as it fails to follow the corporate structure outlined in Texas Business Organizations Code.

The requisite elements of a breach of contract cause of action are: (1) the formation of a valid contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages to plaintiff resulting from the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). The jury found that the parties, BAM and Jackson, had an agreement whereby BAM would pay this amount to Jackson. Whether Jackson was a member of BAM is not a requisite element of a breach of contract cause of action. *See id.*

The cases BAM cites for the proposition that Jackson had the burden to prove his membership status are distinguishable. *See Sohani v. Sunesara*, 546 S.W.3d 393, 406 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 83–84 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Perez v. Le Prive Enters., L.L.C.*, No. 14–15–00291–CV, 2016 WL 3634298, at *3 (Tex. App.—Houston [14th Dist.] July 7, 2016, no pet.). *Sohani v. Sunesara* involved the parties filing declaratory judgment actions to determine membership status in the LLCs and whether that status conferred an entitlement to a percentage of the company's proceeds. *See* 546 S.W.3d at 404. *Perez v. Le Prive Enterprises, L.L.C.* involved another declaratory judgment where individuals sought declarations that they had an ownership interest that was not documented in writing.

10

*See* 2016 WL 3634298, at *3. In the case before us, neither Jackson nor BAM sought a declaration of Jackson's membership status. *Texas Ear Nose & Throat Consultants v. Jones* involved a jury finding determining that a party was still a member of the LLC at the time of trial and the evidence to support that finding. *See* 470 S.W.3d at 83–84. Here, neither party sought to submit a question to the jury regarding Jackson's status as a member. Jackson's only live claim at the time of trial was for breach of contract, and specifically whether the parties had an agreement that BAM would pay him and Florence a combined amount of four percent of the company's gross income.

Nevertheless, even if we agree that this is a controlling issue, BAM, as the party complaining of the judgment, had the burden of objecting to this omission in the court's charge. *See* Tex. R. Civ. P. 274. If "an element is omitted from the charge 'without request or objection,' the missing element can be found by the trial court or deemed found if certain requirements are met." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) (citing Tex. R. Civ. P. 279); *see also Serv. Corp. Int'l*, 348 S.W.3d at 228–29. None of BAM's charge objections addressed the omission of a question regarding Jackson's membership status on the basis that it was a necessary finding or controlling issue that must be submitted to the jury. BAM did not articulate any objection to the omission of any jury question or instruction on the

11

basis that it was a "controlling issue." When discussing the court's charge, BAM failed to mention Jackson's membership status.

Because BAM failed to object that the court's charge omitted a question regarding Jackson's membership status, we determine if legally sufficient evidence supports the deemed membership finding. *Serv. Corp. Int'l*, 348 S.W.3d at 228–29.

> A no-evidence challenge will be sustained when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact."

*Id.* at 228 (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Although there was conflicting evidence, Jackson testified that he and Florence were members. Additionally, evidence at trial showed that Jackson provided start-up capital to open BAM's bank accounts, that he contributed time and labor to the company in the form of bookkeeping, running parts, and other tasks, and he did not take a salary for this work. The various documents admitted in this case at times referred to Jackson as a member, while the Amended Agreement referred to him as an investor. Based on this, legally sufficient evidence supports a deemed membership finding. *See King Ranch, Inc.*, 118 S.W.3d at 751.

We overrule BAM's first and second issues.

### III. Issue Three: Sufficiency of Evidence to Support Damages

In its third issue, BAM challenges the legal and factual sufficiency of the evidence supporting the damages award. BAM contends that Jackson's only evidence of damages "was a conclusory and vague piece of paper that constitutes no evidence."

### A. Standard of Review

Evidence admitted at trial is legally sufficient to support a verdict if it allowed "reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing legal sufficiency, we "credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827). We will sustain a legal sufficiency challenge if the evidence establishing a vital fact is no more than a scintilla. *See id.* at 793. "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). However, evidence offered to prove a vital fact constitutes no more than a scintilla when it "is so weak as to do no more than create a mere surmise or

13

suspicion of its existence[,]" thus, "in legal effect, is no evidence." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

When reviewing the factual sufficiency of the evidence, we "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In examining whether the evidence is factually sufficient to support the jury's findings, we weigh all the evidence, both for and against the finding. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

**B. Analysis**

Despite BAM's argument on appeal that the only evidence of damages was a "conclusory and vague piece of paper[,]" the "Amendment to BAM Operating Agreement" contained the language regarding payment of the "dividend" and indicated that Jackson and Florence would be paid an annual amount of four percent of BAM's gross income. Jackson testified that he and Florence were to receive four percent of BAM's gross income and other evidence indicated it was split equally between Jackson and Florence. Although Jackson did not provide testimony regarding the exact figure, Plaintiff's Exhibit 17 was pre-admitted without objections and sent back for the jury's consideration during deliberations. This exhibit was entitled "Gross Income" and provided quarterly amounts from the second quarter of 2016 through the third quarter of 2018. These gross income figures

14

totaled $5,865,905, with four percent of that amount equaling $234,636.20, and half of the four percent was $117,318.10. The jury awarded Jackson exactly $117,318. The evidence in this case constituted more than a mere scintilla and allowed reasonable and fair-minded jurors to reach the result, therefore, the evidence was legally sufficient to support the jury's finding. *See City of Keller*, 168 S.W.3d at 827.

When examining the evidence for and against the finding, the record reveals that BAM failed to introduce any contrary evidence of any damage calculations. Moreover, contrary to BAM's contention through Johnson that it did not agree to pay the amount, Johnson acknowledged in his testimony and in recorded phone conversations with Jackson that such an agreement existed, but he stopped paying during the Jacksons' contentious divorce. Johnson further testified that he was aware the dividend checks had been written and saw the money come out of the account. When weighing the evidence for and against the jury's finding, we cannot say that the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176; *see also Francis*, 46 S.W.3d at 242. Therefore, we conclude the evidence is factually sufficient to support the jury's damages award.

Having determined the evidence was legally and factually sufficient to support the jury's award of damages, we overrule this issue.

15

## IV. Issue Four: Jury Charge and Casteel Error

BAM argues that the jury charge contained *Casteel* error when it impermissibly commingled valid and invalid theories of recovery in a single broad-form submission, which is presumed harmful. BAM points to two such errors in the charge. First, BAM argues that the trial court erroneously included instructions for ratification and implied ratification with Question 1 in the court's charge, which addressed the existence of a contract. Second, BAM asserts that the trial court erroneously instructed the jury it could find that BAM failed to comply with an unspecified agreement in Question 2. In support of this argument, BAM reasons that it is impossible to ascertain if "the jury determined whether BAM failed to comply with the amended operating agreement, the BAM Company Agreement, or some other unspecified agreement," therefore Question 2 commingled valid and invalid theories.

### A. Standard of Review

A trial court has the discretion to determine necessary and proper jury instructions, and we review those for abuse of discretion. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). A trial court abuses its discretion by failing to follow guiding rules and principles. *Hawley*, 284 S.W.3d at 856. "When a trial court abuses its discretion by including erroneous charge questions or instructions in a

single-theory-of-liability case, our traditional harmless error analysis applies and the appellate courts should review the entire record to determine whether the charge errors probably caused the rendition of an improper judgment." *Thota v. Young*, 366 S.W.3d 678, 693 (Tex. 2012) (citing Tex. R. App. P. 44.1, 61.1; *Bed, Bath, & Beyond, Inc. v. Urista,* 211 S.W.3d 753, 757 (Tex. 2006)).

## B. Analysis

When feasible, a trial court must submit a cause to the jury by broad-form submission. *See* Tex. R. Civ. P. 277. Moreover, it must give "such instructions and definitions as shall be proper to enable the jury to render a verdict." *Id.*; *see also Hawley*, 284 S.W.3d at 855. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Hawley*, 284 S.W.3d at 855–56 (citing *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000)). "[W]hen a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). In such cases where a single broad-form question commingles valid and invalid theories of liability, such error is presumed harmful if an appellate court cannot determine whether the jury

based its answer on an invalid theory. *See* Tex. R. App. P. 61.1(b); *Hawley*, 284 S.W.3d at 864.

## 1. Ratification Instructions and Definition

BAM contends that "the jury may have found that BAM ratified an otherwise unenforceable agreement with Jackson to pay him a dividend[,]" which "effectively precludes this Court from determining whether the jury found liability on an invalid basis or whether the error probably caused the rendition of an improper judgment." The trial court included the following instructions and definitions with Question 1 regarding the existence of an agreement:

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.
>
> A party's conduct includes the conduct of others that the party has ratified. Ratification may be express or implied.
>
> Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

During the charge conference, BAM objected to the inclusion of the definition for implied ratification with Question 1, stated in the charge as follows:

> I believe Mr. Jackson hasn't proven his case-in-chief that the amendment was actually agreed to or signed, so I don't think that question should go to the jury.
>
> I'm also objecting to the definition in terms of implied gratification [sic] at the bottom. He pled for a written contract that

18

everyone signed. I don't think he is allowed to attach that definition to Question 1 because it's outside of his pleadings and outside of his proof.

Contrary to BAM's objection at trial and assertion on appeal that the ratification definition could not be attached to Question 1 since it was not a valid theory of recovery as it was not pleaded and was outside the proof, Jackson's Second Amended Petition, his live pleading at the time of trial, alleged that "plaintiff and his then spouse subsequently separated, and since then have been divorced, the parties had all agreed the dividends provided for in the Amendment to the Operating Agreement would be paid in equal shares to plaintiff[] and Florence[.]" Jackson further alleged that "[f]ollowing execution of the Amendment, defendants made some dividend payments to plaintiff and [Florence]. While dividend payments were due annually, defendants elected to make them quarterly, which was acceptable to plaintiff." Moreover, Jackson's live pleading claimed that "Defendants made some, but not all, dividend payments in accordance with the Amended Operating Agreement until April, 2016[.]"

During trial, BAM's primary contention was that BAM, through Johnson, never agreed to pay Jackson and Florence an amount equal to four percent of its gross income, in essence questioning the existence of this agreement. Specifically, BAM denied Johnson signed the Amendment. Much of Jackson's evidence went to show BAM paid these dividends in an amount consistent with the Amended Agreement and how they changed from annual payments to quarterly payments

19

during the divorce. Evidence adduced at trial showed that Johnson had access to BAM's accounting and banking records with knowledge of the payments. Considering the pleadings and evidence, whether Johnson ratified the Amended Agreement by permitting BAM to pay Jackson and Florence, was squarely before the jury. Based on the foregoing, we determine the instructions and definitions regarding ratification were neither outside the pleadings nor outside the proof.[5] *Hawley*, 284 S.W.3d at 855–56 (citing *Mandlbauer*, 34 S.W.3d at 912) (explaining when jury instructions are proper). In this breach of contract case, the submission of a question regarding the existence of an agreement which included instructions and definitions regarding implied ratification did not commingle valid and invalid theories of recovery in a single broad-form submission question. *See* Tex. R. App. P. 61.1(b); *Hawley*, 284 S.W.3d at 864. Therefore, the trial court did not abuse its discretion.

---

[5] *Hawley* explains that instructions are proper when they assist the jury, state the law accurately, and find support in the pleadings and evidence. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009) (citing *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000)). BAM only complained that the definition and instructions regarding ratification were "outside [the] pleadings and [] proof." It never complained that the ratification language would not assist the jury or was an incorrect statement of the law.

## 2. Question 2: Undefined Agreement and Multiple Theories

Second, BAM asserts that the trial court erroneously instructed the jury it could find that BAM failed to comply with an unspecified agreement in Question 2. Question 1 in the court's charge asked whether the parties agreed to the payment of a dividend "per the 'Amendment to BAM Heavy Equipment & Repair Operating Agreement[.]'" Question 2 then asked, "Did BAM Heavy Equipment and Repair, LLC fail to comply with the agreement?"

During the charge conference, BAM complained that "I don't believe Mr. Jackson proved his cause of action or there was a contract in existence. There was no - - there was no offer acceptance for consideration of the contract. So that is the same objection, that it should not be submitted to the jury." BAM also objected that "[i]n Question Number 2, it says, Comply with the agreement. It doesn't have the definition of the agreement."

On appeal, however, BAM attempts to couch this as a *Casteel* error, commingling valid and invalid theories of recovery, and asserts "it is impossible to determine whether the jury determined whether BAM failed to comply with the amended operating agreement, the BAM Company Agreement, or some other unspecified agreement[.]" We disagree. First, it is evident when examining the entire charge that the trial court's definition of "agreement" in Question 1 that limited it to the "Amendment to the BAM Heavy Equipment & Repair Operating Agreement"

21

necessarily implicated the scope of Question 2. Second, although BAM tries to characterize this as a *Casteel* error, Question 2 did not allow for the commingling of valid and invalid theories. There was one agreement in this case. Either the Original Agreement had been amended or it had not. The Amended Agreement addressed a four percent payment to Jackson and Florence. *Casteel* error occurs when a single broad-form submission commingles valid and invalid theories. *See Thota*, 366 S.W.3d at 687–88; *Casteel* 22 S.W.3d at 389. When the jury answered Question 1 affirmatively, it determined the parties amended the Original Agreement to include the four percent payment. The question of BAM's compliance addressed by Question 2 regarding BAM's failure to comply with the agreement did not commingle valid and invalid theories, as the jury had already determined that the sole agreement in this case had been amended.

We overrule this issue.

### V. Issue Five: Admission of Evidence

Finally, BAM complains the trial court erroneously admitted evidence. Particularly, BAM contends that the trial court erred by admitting documents that constituted settlement negotiations and recorded conversations Jackson had with Johnson due to Jackson's failure to lay the proper foundation for the admission of such evidence.

**A. Standard of Review**

We review a trial court's rulings admitting evidence over a party's objection for an abuse of discretion. *Heniff Transp. Sys., LLC v. Mack Individually and as Next Friend of D.T.M.*, No. 09-19-00049-CV, 2019 WL 5440602, at *4 (Tex. App.—Beaumont Oct. 24, 2019, pet. denied) (mem. op.); *see also State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001) ("Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion."). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "The trial court may exercise its discretion in determining whether a communication amounts to a compromise offer," and we will not overrule that decision if it is supported by evidence. *Tatum v. Progressive Polymers, Inc.*, 881 S.W.2d 835, 837 (Tex. App.—Tyler 1994, no writ) (citation omitted). We will not reverse for the trial court's erroneous admission of evidence unless it "probably caused the rendition of an improper judgment[.]" Tex. R. App. P. 44.1(a)(1).

**B. Analysis**

**1. Settlement Negotiations**

In support of this issue BAM first complains the trial court erroneously admitted documents between various attorneys addressing the payment of dividends and that these documents constituted settlement negotiations. At trial, Jackson

23

sought to introduce two documents wherein attorneys discussed the payment of dividends. BAM objected to both documents on the basis that they constituted settlement negotiations. The trial court overruled these objections and admitted the documents.

Offers made to settle disputed claims are not admissible to prove liability. Tex. R. Evid. 408; *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 649 (Tex.1995) (orig. proceeding); Rule 408 provides as follows:

> **(a) Prohibited Uses.** Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or statements made during compromise negotiations about the claim.
> **(b) Permissible Uses.** The court may admit this evidence for another purpose, such as proving a party's or witness's bias, prejudice, or interest, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Tex. R. Evid. 408; *see Certain Underwriters at Lloyd's, London v. Chi. Bridge & Iron Co.*, 406 S.W.3d 326, 339 (Tex. App.—Beaumont 2013, pet. denied). "Whether documents constitute an offer of settlement depends on 'whether something is given up by one of the parties to avoid litigation where some concession is made by one or both of the parties.'" *Chi. Bridge & Iron Co.*, 406 S.W.3d at 340 (quoting *Tatum,* 881 S.W.2d at 837).

Even if the trial court erred in admitting these documents, BAM has failed to show that such evidence probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Other similar evidence was adduced at trial without objection that the evidence was inadmissible as settlement negotiations. Jackson testified regarding a meeting with Johnson and Johnson's desire to reduce the dividend payment from four percent to two percent. Likewise, Johnson testified that he contacted Jackson about reducing the dividend and described potentially reducing the dividend from four percent to two percent. Johnson's attorney elicited the following testimony from him:

> Q. And in discussions with them about how they were going to get compensation, what was the agreed compensation that you said they could do?
> A. The agreed compensation was they would get paid 4 percent per quarter.
> Q. 4 percent per quarter out of the gross income?
> A. See, that's where it's hazy because I was under the impression at first it was off of gross, not profit.

In addition to the foregoing testimony, as discussed in greater detail below, the evidence contained in these exhibits was admitted elsewhere in the form of recorded conversations between Jackson and Johnson.[6] Considering the other evidence, any error in admitting the complained-of documents was harmless.

---

[6] BAM did not object to the admissibility of this recording on the basis that it constituted settlement negotiations.

25

## 2. Recorded Conversation and Transcript

BAM next complains that the trial court erred by admitting a recorded conversation between Jackson and Johnson, as well as a transcript of that recording, for failure to lay the proper foundation. A proper foundation can be laid for the admission of the recording by the following:

> (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity of the correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.

*Seymour v. Gillespie*, 608 S.W.2d 897, 898 (Tex. 1980). Some elements may be inferred and need not be shown in detail. *See id.*

The recorded conversation involved a lengthy discussion between Jackson and Johnson regarding the divorce, dividend payment, a reduction of payment to two percent, and proposals sent by BAM's attorney to Jackson and Florence. Jackson played a short excerpt for the jury. The objection raised at trial was for "improper predicate," as well as "improper recording, lack of foundation, lack of evidence, and possibly an incomplete record[.]" Johnson also complained that the "[t]estimony could . . . be severely prejudicial because it could be taken out of context." During Jackson's testimony he explained the following as it pertained to the recording:

> I know the original recording device was my cell phone. I have that right here, the original. I can verify it. I can verify the voices on the

26

recording. And I can verify that I've been in possession of it ever since that time.

The trial court overruled the objections and noted that Jackson testified to the history of the recording. Jackson's testimony established he recorded the conversations with his cell phone, he could verify the voices on the recording, it was the original, and it had been in his possession since he recorded it. Critical to BAM's complaint was that it did not know if it was the complete recording. Jackson's testimony that the recording was original allowed the trial court to conclude it had not been altered or edited. Accordingly, the trial court did not abuse its discretion in determining Jackson laid the proper foundation for the recording's admissibility.

Next, BAM complains that the trial court abused its discretion by failing to listen to the recording before ruling on its admissibility when the contents of the recording were at issue. BAM relies upon *Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 546 (Tex. 2018) for this proposition. *Diamond Offshore* is distinguishable though. That case involved a video recording rather than an audio recording. *See id.* at 542. The Texas Supreme Court explained the unique considerations with video evidence. *See id.* In recognizing video "can be the single most compelling piece of evidence in a case, captivating the jury's attention like no other evidence could[,]" the Court explained that "[v]ideo can often convey what an oral description cannot—demeanor, personality, expressions, and motion, to name a few." *Id.*

The objection before the trial court in that case was that the probative value of the evidence was significantly outweighed by the prejudicial impact. *See id.* at 544–45; *see also* Tex. R. Evid. 403. In reaching its conclusion, the Court explained a Rule 403 objection requires the trial court to "balance probative value against the relevant countervailing factors to determine admissibility."[7] *Id.* At trial, BAM's 403 complaint seemed to be that they had no way of knowing if it was a complete recording or transcript, which could be taken out of context and thus, be prejudicial to BAM. The trial court noted the entire recording would be admitted.

Based on the record before us, we need not address whether this holding extends to audio recordings. Assuming, but without deciding, that the trial court abused its discretion by failing to listen to the audio recording to determine whether the probative value outweighed the danger of unfair prejudice or confusing the jury, such error was harmless given the other evidence admitted at trial in the record before us. *See* Tex. R. App. P. 44.1(a)(1) (explaining reversible error occurs if the error "probably caused the rendition of an improper judgment[]"). Jackson and Johnson both testified they had agreed to a four percent payment of gross income.

---

[7] This requires balancing the evidence's probative value against concerns including unfair prejudice, the potential to mislead the jury, and needless presentation of cumulative evidence. *See* Tex. R. Evid. 403; *Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 542 (Tex. 2018). "Rule 403 favors admission by requiring these countervailing concerns to substantially outweigh the evidence's probative value before it may be excluded." *Diamond Offshore*, 542 S.W.3d at 542.

Both also testified that BAM made the four percent payments for a period before stopping them. Finally, Johnson admitted that he approached Jackson about reducing the payments from four percent to two percent. Similar information was contained in the recording. We overrule this issue.

## Conclusion

Having overruled each of BAM's issues, we affirm the trial court's final judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 26, 2021
Opinion Delivered July 29, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.